**Joseph VARVARO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–87–00031–CR.**

Court of Appeals of Texas,
Tyler.

June 29, 1988.

Rehearing Denied Aug. 11, 1988.

Joe Thigpen, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., Tyler, for appellee.

COLLEY, Justice.

Joseph Varvaro was convicted of criminal solicitation to commit capital murder[1] by a jury who assessed his punishment at life imprisonment.

Varvaro argues six points of error. The first two points relate to the trial court's failure to find[2] that Varvaro did not knowingly and intelligently waive his right of appeal. Our presubmission order overruling the State's motion to dismiss this appeal renders Varvaro's points one and two moot.

In his third point of error, Varvaro contends the trial court erred in failing to instruct the jury at the guilt-innocence phase that an undercover police officer, Mike Nelson,[3] was an accomplice witness as a matter of law. The State replies that Varvaro's objection at trial does not comport with the point of error, and thus the complaint is not preserved for review. Varvaro's objection to the charge reads,

[T]he defendant respectfully objects to the Court's failure to instruct the jury

that the witness, Nelson, cannot be corroborated by the witness, Merrett, and that the witness, Merrett, cannot be corroborated by the witness, Nelson. The reason that the same is required by statute that a person cannot be convicted upon the uncorroborated testimony of an accomplice and although Article 15.03 states that the witness, Nelson, as a matter of law, must be corroborated, does not define the witness, Nelson, as an accomplice.

Indulging a liberal interpretation of the briefing rules, we conclude that the language of the objection is sufficient to preserve the point for review.

By his fourth point Varvaro contends (1) that Nelson's testimony is not corroborated as required by Tex.Penal Code Ann. § 15.03(b) (Vernon 1974) and (2) the testimony is not sufficiently corroborated as required by Tex.Code Crim.Proc. art. 38.14 (Vernon 1979).

The record reveals that in January, 1985, Varvaro, then employed as supervisor at Trane Corporation in Tyler, approached Don Merrett, a Trane employee under Varvaro's supervision, and asked Merrett "if [he] could, [himself] or if [he] could find somebody to kill somebody for him." Merrett testified that he thought Varvaro "was joking," but related that Varvaro repeated the questioning "almost every day" for several months. Merrett related that finally on March 15, 1985, he became persuaded that Varvaro was "dead serious and [that] he was willing to pay" for the killing. So, as Merrett stated, "I started keeping notes like a diary" on March 15, 1985. Later, and after several other conversations with Varvaro, Merrett testified that he met with Varvaro on March 26, 1985, who told him the intended victim was a forty-eight year

---

1. Pursuant to Tex.Penal Code Ann. § 15.03(a) (Vernon 1974).

2. On July 31, 1987, this appeal was abated and the cause remanded in order for the trial court to conduct an evidentiary hearing to determine whether Varvaro made a postsentence knowing and intentional waiver of his right to appeal his conviction in this cause. The trial judge conducted the hearing and stated as a part of his findings that he was unable to conclude, based on the evidence presented, whether Varvaro's

written waiver of appeal was knowingly and intelligently signed and made. Upon receipt of the transcript of that hearing and the court's findings, we overruled the State's motion to dismiss Varvaro's appeal on September 10, 1987.

3. Nelson is a criminal investigator with the Texas Department of Public Safety stationed in Garland.

old nurse who was "blackmailing him." Merrett stated that on that occasion Varvaro told him, "He didn't want a messy murder, but to put another bullet in her head after she was dead."

After Merrett became convinced that Varvaro was in earnest about the murder, he contacted a Henderson County deputy sheriff who put him in touch with other law enforcement officers. Ultimately in late March 1985 Merrett telephoned Ranger Stuart Dowell and a plan was devised whereby Merrett was to contact a fictitious friend in St. Louis, Missouri, named "Rip." Rip was actually a Sergeant in the Criminal Intelligence Division of the St. Louis Police Department, Sergeant Harry Hagger.

Dowell gave Merrett the unlisted telephone number of the St. Louis Police Department, and on the same day, March 25, 1985, Merrett and Varvaro called Rip. Varvaro and Rip had a conversation about the killing of the intended victim which was recorded. That tape was introduced into evidence and played to the jury. During the conversation Varvaro told Hagger he wanted the victim killed and to make the event look like a robbery.

The next day Hagger, pretending to be Rip, called and informed Varvaro that he could not make the hit, but that he had a friend in New Orleans, "Jim," who would do the killing for the remuneration tendered by Varvaro. "Jim," who was really Mike Nelson, called Varvaro from the Holiday Inn North in Tyler and instructed him to come to Room 405 of the motel to make the final plans for the murder and to pay him.

The record shows that Merrett and Varvaro went to the motel room where Varvaro entered but Merrett remained outside. The conversation between Varvaro and Nelson in the room was also taped. The

tape, which was admitted into evidence without objection, and Nelson's testimony revealed that Varvaro, in no uncertain words, hired Nelson to kill the intended victim. Immediately thereafter Varvaro was arrested by Ranger Stuart Dowell and transported to the Smith County Jail. Varvaro did not testify, and offered no evidence at the guilt-innocence phase.

▮ In *Easter v. State*, 536 S.W.2d 223, 227 (Tex.Cr.App.1976), following several respectable precedents, the court wrote, "One is not an accomplice witness who cannot be prosecuted for the offense with which the accused is charged."[4] Likewise relying on strong precedents, when considering circumstances where an undercover police officer obtained evidence from an accused in a drug case and the defendant claimed the undercover officer was an accomplice witness, the Court of Criminal Appeals in *Hayslip v. State*, 502 S.W.2d 119, 121 (Tex.Cr.App.1973), held, "An undercover agent is not an accomplice witness *so long as he does not bring about the crime*, but merely obtains evidence to be used against those engaged in the [crime]." *See also Alexander v. State*, 168 Tex.Crim.R. 288, 325 S.W.2d 139, 140 (1959); and *Gomez v. State*, 461 S.W.2d 422, 425 (Tex.Cr.App.1971). The same principle of law has been applied in cases where a private citizen[5] and a reserve police officer[6] who was not a "peace officer" acted as undercover police agents.

The record before us conclusively establishes that Nelson was merely playing the role of a "hit man" to afford Varvaro an opportunity to commit the offense of criminal solicitation for capital murder as defined in Tex.Penal Code Ann. § 15.03(a) (Vernon 1974), and former article 19.-03(a)(3).[7]

---

**4.** Under the provisions of Tex.Code Crim.Proc. Ann. art. 38.14 (Vernon 1979).

**5.** *See Burns v. State*, 473 S.W.2d 19 (Tex.Cr.App. 1971).

**6.** *See Parr v. State*, 606 S.W.2d 928 (Tex.Cr.App. 1980).

**7.** Act of June 19, 1983, ch. 977, § 6, 1983 Tex. Gen.Laws 5317, amended by Act of April 23,

1985, ch. 44, § 1, 1985 Tex.Gen.Laws 434 (effective September 1, 1985), reading in pertinent part as follows:

> 15.03. Criminal Solicitation
> (a) A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or *attempts to induce another to engage* in specific conduct that, under the circumstances surrounding his conduct as the

As Varvaro argues, in *Richardson v. State*, 700 S.W.2d 591, 594 (Tex.Cr.App. 1985), the court stated that article 38.14 [8] and section 15.03(b) are analogous and that section 15.03(b) "should be read in conjunction [with article 38.14]" in testing the sufficiency of evidence presented in corroboration of an accomplice witness' testimony in a criminal solicitation case. However, it must be understood that in a criminal solicitation case, prosecuted under section 15.-03(a), corroboration is required whether or not the "person allegedly solicited" to commit the crime is an *accomplice witness.* Hence, as in our case, where the person solicited to commit the offenses is an undercover police officer, acting out a role to obtain evidence against the accused solicitor, the officer is not an accomplice witness as a matter of law. Nevertheless, section 15.03(b) precludes a conviction of the accused, "unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the [accused's] intent that [the person solicited] acts on the solicitation."

Here the trial court included in its charge at the guilt-innocence phase the following instructions, to wit:

> You are instructed that a person may not be convicted for solicitation on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the defendant's intent that the other person act on the solicitation.

> And so, in this case, unless you find from the evidence beyond a reasonable doubt that the testimony of MIKE NELSON is corroborated by other evidence in the case, outside of the evidence of the said MIKE NELSON, and that the solicitation itself was made under circumstances strongly corroborative of both the solicitation itself, if any, and the defendant's intent, if any, that MIKE NELSON act on the alleged solicitation, then you will acquit the defendant; or if you have a reasonable doubt as to the existence of either of such matters, then you will find defendant not guilty.

These instructions are emminently correct, and provide Varvaro the full measure of protection mandated by section 15.03(b). The court correctly overruled Varvaro's objection that the charge contained no instruction to the jury that Nelson was an accomplice witness as a matter of law. As earlier noted, to the contrary the undisputed evidence establishes as a matter of law that Nelson was *not* an accomplice witness. The third point of error is overruled.

■ We now address Varvaro's fourth point of error whereby he contends that Nelson's testimony is not sufficiently corroborated by other evidence. In our determination of this point, we will "consider the combined weight of the ... [direct and circumstantial] ... evidence." *Richardson*, 700 S.W.2d at 594. The actual oral solicitation to commit the capital murder made by Varvaro of Nelson in Room 405 of the motel was recorded. The tape was admitted into evidence and played before the jury. That tape alone provides sufficient corroboration of Nelson's live testimony. Moreover, Merrett's testimony strongly corroborates Nelson's testimony in all respects, that is, as to the solicitation made according to Nelson's testimony as well as to Varvaro's intent that Nelson actually kill the intended victim. The evidence discloses

---

actor believes them to be, would constitute the felony or make the other a party to its commission.

(b) A person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation.

....

19.03. Capital Murder

(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:

....

(3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration;

....

8. Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 1979), hereafter article 38.14.

**144**

that for almost three months Varvaro daily persisted in trying to find and hire a killer. The testimony shows that Varvaro showed Merrett the intended victim's place of residence and delivered to him keys to the victim's automobile and home, as well as the diagram of the floor plan of the home. We conclude that the evidence, other than Nelson's testimony, is sufficient to corroborate Nelson's testimonial version of Varvaro's solicitation and his intent that Nelson act on it. Further such evidence not only tends to "connect" Varvaro with the offense, but is sufficient to establish Varvaro's guilt without Nelson's live testimony. Varvaro's fourth point of error is overruled.

■ Varvaro complains by his fifth and sixth points of error that the court erred in overruling his objections to the following portions of the State's closing argument, to wit:

### (FIRST PORTION)

Ladies and gentlemen, I ask you to return a verdict of guilty because the uncontradicted testimony in this case and the words of the defendant himself, show he is guilty of solicitation, soliciting the capital murder of Delores Underwood Guillory, beyond any doubt whatsoever.

The objection made was,

We object to the counsel for the State making the statement, the uncontradicted record in this cause, as being an improper allegation in reference to the defendant's failure to testify in this cause, Your Honor, and we therefore ask for a mistrial in regard to that.

### (SECOND PORTION)

It is like Mr. Holcomb said, you need to reach out and feel sorry for this individual because he is down on his luck, because somehow or another he's unfortunate. He is not unfortunate; he is a cold-blooded killer. That's all he is.

The objection made was,

We respectfully object to the statement made by counsel being totally without the record, with no basis in fact in regard to the statement that the client is a killer. We request the Court instruct the jury to disregard it for any purpose whatsoever. It's entirely prejudicial.

The State correctly asserts that the objection was not leveled against the remarks first quoted above until the State's closing argument was completed. The objection was therefore untimely made. *Thompson v. State*, 691 S.W.2d 627, 635 (Tex.Cr.App. 1984). Moreover, the argument was certainly not a direct comment, and was not of such character that the jury would necessarily have considered it to be a comment on Varvaro's failure to testify. The prosecutor's remarks were obviously made in reference to the audio tape of the conversations between Varvaro and Nelson which took place at the motel room. The fifth point of error is overruled. *Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App.1975).

■ By his sixth point of error Varvaro alleges the trial court erred in overruling his motion for mistrial based on the prosecutor's remarks that Varvaro was "not unfortunate; he is a cold-blooded killer. That's all he is." The court promptly sustained Varvaro's objection, and instructed the jury "to disregard the statement [of] the district attorney with reference to the defendant as a cold blooded killer." The point has no merit for at least two reasons. First, the prompt action of the trial judge cured any harm to the defendant, and second the remarks constituted a mere expression of the personal opinion of the prosecutor based on and warranted by the evidence in the case. *See McKay v. State*, 707 S.W.2d 23 (Tex.Cr.App.1985). The point of error is overruled.

The judgment is AFFIRMED.