**Allen Dirron NORRID, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–95–127–CR.**

Court of Appeals of Texas,
Fort Worth.

June 13, 1996.

**344**

Pamela J. Moore, Fort Worth, for Appellant on appeal.

Tim Curry, Criminal Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of the Appellate Section, and Helena F. Faulkner and Lisa Mullen, Assts., Fort Worth, for Appellee.

Before CAYCE, C.J., SHIRLEY W. BUTTS (Retired) and H. BRYAN POFF, Jr. (Assigned), JJ.

## OPINION

SHIRLEY W. BUTTS, Justice (Retired).

This is an appeal from two convictions on separate counts of solicitation of capital murder.[1] A jury found appellant guilty on each count. After appellant's plea of true to two enhancement paragraphs, the jury set punishment for each count at life imprisonment and a fine of $2,000. The sentences will be served concurrently.

Appellant advances nine points of error, alleging the trial court erred in admitting into evidence a tape recording of his conversation; in limiting his cross-examination of a State's witness; in admitting evidence of an extraneous offense; in refusing his specially requested jury charges on 1) kidnapping, 2) extraneous offenses, 3) kidnapping at the punishment stage, and 4) extraneous offenses at the punishment stage; and in twice overruling his objections to improper jury argument. We affirm.

The evidence shows that State's witness Suzanne Hickman, who was married to Kelly Hickman, became involved with appellant in 1993. She testified she became frightened of him and tried unsuccessfully to end the affair. In February 1994, appellant was arrested for the aggravated kidnapping of Ms. Hickman and burglary of a habitation.

Carlton Duane Keeble, appellant's cell mate at the Tarrant County Jail, testified that in April or May 1994, appellant began to talk to him about finding someone to take care of "a couple of problems" for him. He wanted to have a "hit man" kill the Hickmans to prevent them from testifying at his upcoming trial of the pending cases. Not taking the talk seriously at first, Keeble attributed it to appellant's anger. However, appellant continued to talk to Keeble about having the Hickmans killed.

On July 4, 1994, appellant brought up the same subject. It appeared that Keeble would soon be released on bail. Appellant placed a letter and a map of the Hickmans' apartment under Keeble's bed. He instructed Keeble to give the documents to "Preach-

---

1. The criminal solicitation statute provides, in pertinent part:

   **§ 15.03. Criminal Solicitation**
   (a) A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.
   Tex. Penal Code Ann. § 15.03 (Vernon 1994).

   The capital murder statute provides, in pertinent part:

   **§ 19.03. Capital Murder**
   (a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) and:
   . . . .
   (3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration. . . .
   *Id.* § 19.03.

er," a member of the Lost Souls of Fallen Angels biker gang. According to appellant, Preacher would arrange the killings.

Thereafter when Keeble expressed his doubt to appellant about making bond, appellant asked if he knew someone appellant could hire to kill the couple. Keeble said he knew "Jimmy," a supposed killer. Promising Keeble $5,000, appellant asked Keeble every day to put him in touch with "Jimmy."

At Keeble's request, his mother relayed the information to the prosecutor of appellant's pending cases. A meeting between Keeble, his attorney, prosecutors, and District Attorney Investigator David Whisenhunt ensued. Keeble turned over the letter and map. The investigator instructed him to tell appellant to call a certain telephone number for "Jimmy" at 6:00 p.m. The fictional Jimmy was actually Danny McCormick, another investigator with the Tarrant County D.A.'s office.

At 6:00 p.m. on July 22, 1994, appellant made the call with Keeble at his side. Jimmy answered, talked with Keeble briefly, then spoke with appellant. Appellant explained what he wanted Jimmy to do, saying the Hickmans were trying to put him away. Appellant agreed to pay Jimmy to kill them. The investigator recorded the telephone conversation. This tape recording made the basis of appellant's point of error.

Keeble testified that after the phone conversation, appellant cheerfully repeated, "They are dead." He would pat his heart and say, "I am going to feel so much remorse and regret when they inform me Suzanne Hickman and her husband is [sic] dead." He gave Keeble a letter with information on Ms. Hickman's habits and a map of her apartment for Keeble to give Jimmy. He asked to be kept informed. Later appellant was moved out of that jail tank.

In the first point of error, appellant contends the trial court erred in admitting the tape recorded telephone conversation because it was made in violation of appellant's Fifth Amendment right against self-incrimination. The trial court conducted a pretrial hearing on the admissibility of the tape, ruling it was admissible. Appellant renewed the objection at trial.

■ Appellant argues that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) applies, as well as TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.1996). He theorizes that he was in police custody at the jail, the statement was made in response to custodial interrogation, and the police or an agent of the police conducted the interrogation. We do not agree.

■ Generally, a statement or confession, as contemplated by *Miranda* and article 38.22, relates to a crime already committed. The officers seek to obtain a statement from the suspect that will incriminate him and aid in solving the existing crime. In the present case, indictments had been returned against appellant for kidnapping and burglary of a habitation, and appellant was incarcerated pending trial. He was striving to hire a hit man to execute two projected murders, rather than confessing to known law enforcement officials.

In both *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) and *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the defendants were in jail awaiting trial on pending cases.

*Perkins* is instructive. There it was held that the undercover agent posing as a fellow inmate need not give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response and that the statements were voluntary. *Perkins*, 496 U.S. at 300, 110 S.Ct. at 2399, 110 L.Ed.2d at 253. The Court rejected the argument that *Miranda* warnings are required whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent. "The tactic employed here to elicit a voluntary confession from a suspect does not violate the Self-Incrimination Clause." *Id.* at 298, 110 S.Ct. at 2398, 110 L.Ed.2d at 252. Therefore, even if the statements obtained in the present case resulted from questioning by the government agent, they would be admissible pursuant to *Perkins*. Significant-

ly, appellant himself initiated the search for a "hit man" and voluntarily produced information and a map.

The facts in the present case are somewhat similar to those in *Varvaro v. State*, 772 S.W.2d 140 (Tex.App.—Tyler 1988, pet. ref'd). Varvaro was found guilty of solicitation of capital murder. He persisted in asking a fellow employee "if [he] could, [himself] or if [he] could find somebody to kill somebody" for him. This went on "almost every day." *Id.* at 141. The fellow employee contacted law enforcement authorities, who sent in an undercover policeman to meet with Varvaro. A taped conversation between an undercover officer and Varvaro was admitted into evidence. A second tape recording between Varvaro and a second officer, who played the "hit man," was also admitted into evidence. No objection based on lack of *Miranda* warnings was made and that was not a question on appeal. The question in that case concerned corroboration of the solicitation, and the court found it was corroborated:

> The actual oral solicitation to commit the capital murder made by Varvaro of [the officer] in Room 405 of the motel was recorded. The tape was admitted into evidence and played before the jury. That tape alone provides sufficient corroboration of [the officer's] live testimony.

*Id.* at 143. In the present case, both Keeble and the undercover investigator who taped the oral solicitation testified and were subject to cross-examination.

Appellant's reliance on the Self–Incrimination Clause, *Miranda, Massiah,* and article 38.22 is misplaced. It was held in *Chambliss v. State*, 647 S.W.2d 257, 262 (Tex.Crim.App. 1983) that statements which are not the result of, or do not stem from, custodial interrogation are admissible under article 38.22 on the question of guilt.

Most compelling in the present case is the fact that appellant engaged in voluntary solicitation of capital murder with his cell mate and the undercover officer. We hold that appellant's statements of solicitation to his cell mate and the undercover officer "Jimmy" were voluntarily made. No *Miranda* warnings were required. Therefore, the trial court did not err in admitting the taped telephone conversation into evidence. The first point is overruled.

■ In point of error two, appellant asserts that error resulted when the trial court limited his cross-examination of Ms. Hickman regarding credibility issues in violation of his Sixth Amendment right of confrontation and effective assistance of counsel.

The State filed a motion in limine to prohibit the introduction of evidence concerning the witness's psychological counseling, her medications (Lithium, Prozac, and Dezaril), excessive use of alcohol, another sexual partner, and her intoxication on the day of the kidnapping. Ms. Hickman, a victim of the kidnapping offense, testified about her affair with appellant and that she was frightened of him. On direct examination, she related telling her husband about the affair and trying to end it.

■ Defense counsel sought to cross-examine her about her conduct as to psychological treatment and medications, sexual preferences, and alcoholism, stating the reason was to rebut evidence that appellant had kidnapped the witness and struck her husband at that time. In addition, it was argued that Ms. Hickman left a false impression with the jury about her personal life and trying to repair her marriage. The court permitted appellant to make a bill of exceptions about these matters in a hearing outside the jury's presence. The State argues that TEX. R. CRIM. EVID. 608(b) precludes this kind of cross-examination. The rule provides:

> **(b) Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

*Id.* The subject matter of these questions was not shown to be relevant to any contested issue in the case on trial, solicitation of capital murder. *See Fagbemi v. State*, 778 S.W.2d 119, 121 (Tex.App.—Texarkana 1989, pet. ref'd). No constitutional rights of appel-

lant have been violated, since appellant had no right to ask irrelevant or improper questions of a witness. *Ray v. State,* 764 S.W.2d 406, 413 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

Appellant relies on *Virts v. State,* 739 S.W.2d 25 (Tex.Crim.App.1987). Appellant cannot benefit from *Virts.* In that case, the State's witness was an accomplice as a matter of law and a co-defendant who testified to the defendant's participation in the murders. *Id.* at 27. The witness was the most important State's witness. Denying Virts the opportunity to cross-examine the co-defendant concerning her recent mental illness was error because this may have affected her credibility and memory of events at the scene of the murders. That is not the present situation.

■ The right of cross-examination, while constitutionally secured, is not without limitations. The trial judge retains wide latitude to impose reasonable limits on cross-examination, based upon concerns about, among other things, harassment, prejudice, confusion of issues, and the witness's safety. *Id.* at 28. In this case the witness was not a co-defendant. She presumably had no knowledge of the oral solicitation of her murder until informed by the authorities. She did not testify regarding the commission of that offense.

■ The general rule is that a party is not entitled to impeach a witness on a collateral matter. "The test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea." *Ramirez v. State,* 802 S.W.2d 674, 675 (Tex. Crim.App.1990) (citing *Bates v. State,* 587 S.W.2d 121, 133 (Tex.Crim.App.1979)). In the present case, appellant was not entitled to rely on evidence in his defense of the solicitation of capital murder charge that Ms. Hickman had been treated for mental illness, had used drugs, had a drinking problem, and had a sexual partner other than her husband or appellant.

Appellant further argues that Ms. Hickman left a "false impression" with the jury about her personal life and that she was trying to mend her marriage, and this was a ground for impeachment of her credibility. Whether or not the witness was attempting to mend her marriage would not come within the general rule's exception of "false impression." This was merely a collateral matter.

■ Rule 608(b), by its terms, is very restrictive. It forbids the use of specific instances of conduct to impeach a witness's credibility, except for criminal convictions as provided by TEX. R. CRIM. EVID. 609.

■ Regarding the assertion that the cross-examination was proper to show the witness's bias, it is not clear how the intended subjects of cross-examination indicate bias or motivation on the witness's part. *See Moody v. State,* 827 S.W.2d 875, 891 (Tex. Crim.App.), *cert. denied,* 506 U.S. 839, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992). This kind of cross-examination to rebut the kidnapping and burglary charges would confuse the issues before the jury in the instant solicitation case and would be harassment of the witness.

■ In addition, appellant was not denied effective assistance of counsel because of the excluded cross-examination. The court's restriction of the cross-examination was reasonable. Appellant's counsel was not limited in his cross-examination of the witness about matters material to the case on trial. No deprivation of the right to effective assistance of counsel has been shown. We conclude there was no abuse of discretion in the exclusion of the proffered cross-examination testimony. Point of error two is overruled.

■ Appellant next claims error occurred when, over objection, the court admitted evidence of the extraneous offense of kidnapping. The trial court had earlier overruled appellant's motion in limine that no evidence of the offenses of kidnapping and burglary be admitted.

Appellant complains of Ms. Hickman's testimony about kidnapping and the overruling of the extraneous offense objection at that time. However, the first evidence of kidnapping came into the trial during testimony of Keeble, the cell mate. The prosecutor asked:

Q. After a period of time that y'all were bunk mates, you and this Defendant, did the Defendant ever start discussing with you the facts of his case, why he was in custody?

A. Yes, ma'am, he did.

Q. Did he tell you what his charge was?

A. He told me that he was in for ——

[DEFENSE COUNSEL]: Excuse me, Judge. We object to hearsay. . . .

[The objection was overruled, and the question repeated.]

A. Kidnaping.

Q. And did he discuss with you, without telling me the facts, did he discuss with you the facts of what he had done during that kidnaping?

A. Yes, ma'am, he did.

Later the prosecutor asked Keeble if he knew that Ms. Hickman was the victim in the *kidnapping.* He answered he did. Still later in direct examination, Keeble acknowledged that appellant told him he had a trial setting "coming up" on the aggravated kidnapping case.

There were no objections to any of these statements by Keeble regarding the kidnapping. Keeble testified that he asked appellant whether he was serious about hiring a hit man to kill the Hickmans. The response was, "You are damn right. I want them dead." Asked whether appellant said why, the response was, "To keep them from testifying against him in that kidnaping trial." Therefore, any possible error in admission of the same evidence of kidnapping from Ms. Hickman has been waived.[2]

■ When Ms. Hickman first mentioned burglary of a habitation, appellant's objection was a general one, "It's an extraneous matter which has nothing to do with this case." The court overruled the objection. On appeal it is urged that otherwise admissible evidence of extraneous offenses may be rendered inadmissible if the prejudicial effect outweighs the probative value. However, there was no

TEX. R. CRIM. EVID. 403 objection made at trial (was the evidence, even if relevant, substantially outweighed by the danger of unfair prejudice). Nor did the court receive an initial request to consider the evidence pursuant to rule 404(b). *See Montgomery v. State,* 810 S.W.2d 372, 387–90 (Tex.Crim.App. 1991) (op. on reh'g). Therefore, the alleged error presented on appeal was not preserved for review.

■ The trial judge overruled the motion in limine, indicating the ruling on admission of evidence of the offenses would be made at trial. Keeble told the jury the reason appellant tried to hire a hit man was that the proposed victims would testify against appellant at his upcoming trial. Thus, the earlier offenses were relevant circumstances leading to the instant offenses. The jury was entitled to know about the role these offenses played in the case on trial as a part of the whole criminal transaction.

Even if the alleged error had been preserved, the trial court, with its wide discretionary powers as to admission of evidence, could properly have admitted the evidence. TEX. R. CRIM. EVID. 404(b); *see Stoker v. State,* 788 S.W.2d 1, 12–13 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Point of error three is overruled.

■ In the next four points of error, appellant argues the trial court erred by not charging the jury at each phase of trial as to limitation of its consideration of the extraneous offense of kidnapping and also by not charging the jury that they must find that the kidnapping occurred beyond a reasonable doubt.

In *Hoffert v. State,* 623 S.W.2d 141, 145 (Tex.Crim.App. [Panel Op.] 1981), it is written: "The Court has ... consistently held that it is not necessary to give a limiting instruction on an extraneous offense which is admitted as part of a transaction which includes the offense on trial." The *Hoffert*

---

2. At the punishment phase of trial, both the prosecutor and appellant's counsel delved into minute details of the kidnapping and burglary offenses, including evidence of appellant striking Kelly Hickman and pulling Ms. Hickman out the door. The officer who arrested appellant testified to specific details also.

court explained the extraneous offenses in that case were admissible to show the circumstances or context of the instant offense. *Id.*

In *Camacho v. State,* 864 S.W.2d 524, 532 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994), the court held the kidnapping in that case was the "[s]ame transaction contextual evidence." Such evidence imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven. It is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged. *Id.*

In the present case the offenses were the same transaction contextual offenses, the admission of which was intended to aid the jury in understanding the whole interwoven transaction and to intelligently perform their function of deciding guilt or innocence and what punishment, if any, to assess. Therefore, no limiting instruction was required. Points of error five and seven are overruled.

■■■ The second request was for the limiting instruction to define kidnapping and to require the jury to find beyond a reasonable doubt the elements of that offense and that the kidnapping actually occurred before considering it as evidence. Appellant is correct in stating the trial court must include in a limiting instruction that a jury must find that a defendant committed the extraneous offense beyond a reasonable doubt. *George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App. 1994). However, as determined above, no limiting instruction was required since the evidence of kidnapping was not admitted for the purpose of showing character under rule 404(b). The earlier offense related directly to the offense of solicitation of capital murder. Moreover, since this was not a trial on the kidnapping charge, the jury would not be required to find those elements. Points of error four and six are overruled.

In points of error eight and nine, appellant contends the trial court erred in overruling his objections to improper jury argument at the punishment phase.

■■■ The prosecutor described several acts of violence committed by appellant. She told about his release from prison in 1992 and his failure to become "a productive member" of society. She continued:

[A]nd you hear from Suzie. And you hear the horrific details of the torturous treatment of Suzie Hickman by this *animal.* This is *animal.*

[DEFENSE COUNSEL]: Excuse me. Your Honor, we're going to object to the characterization of this defendant by the State.

THE COURT: Sustained. [Emphasis added.]

Counsel requested an instruction to disregard, which the court gave the jury. Counsel then asked for a mistrial, which was denied.

The second prosecutor detailed more of appellant's treatment of Ms. Hickman and others. She continued:

How about all the police officers he's threatened to kill? How about Carlton Keeble? Has he crossed this man now?
. . .

What about myself and Ms. Clinkscale [the other prosecutor]? Do you think we've crossed this man asking you for life in the penitentiary?

[DEFENSE COUNSEL]: Excuse me. Your Honor, I'll object.

THE COURT: Sustained.

Counsel requested an instruction to disregard. The court instructed the jury to disregard. Counsel requested a mistrial, which was denied.

■■■ Proper jury argument can be a summation of the evidence, a reasonable deduction from the evidence, an answer to argument of opposing counsel, or a plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973). Appellant contends the record as a whole should be examined to determine whether the language was manifestly improper. The State argues the record shows the arguments were reasonable deductions from the evidence.

Regarding the "animal" reference, some courts have said such a reference in those cases was a reasonable deduction from the evidence. *See Burns v. State,* 556 S.W.2d 270, 285 (Tex.Crim.App.), *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977); *Belton v. State,* 900 S.W.2d 886, 898 (Tex. App.—El Paso 1995, pet. ref'd); *Garza v. State,* 783 S.W.2d 796, 800 (Tex.App.—San Antonio 1990, no pet.).

However, this kind of argument has been disapproved in *Tompkins v. State,* 774 S.W.2d 195, 217–18 (Tex.Crim.App.1987), *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).

■ Generally, any harm from an improper statement in a jury argument is remedied when the court instructs the jury to disregard unless the remark is so inflammatory that the prejudicial effect cannot be removed by an admonishment. *Johnson v. State,* 698 S.W.2d 154, 167 (Tex.Crim.App. 1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). The statement in this case was not so inflammatory that the trial court's instruction to disregard could not cure any harm. Even assuming the reference to "animal" was improper, we find that the trial court's prompt instruction to disregard cured any harm. *See Tompkins,* 774 S.W.2d at 218.

■ Appellant has not briefed the second jury argument (whether appellant might attempt to harm the prosecutors for "crossing" him). Appellant cites this court to no specific authority to support this claim. *See* TEX. R. APP. P. 74(f); *Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App.), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). That assignment may be impossible because of the form of the objection at trial. We do not know, and cannot speculate upon, the legal basis of the objection, "I'll object." Therefore, nothing is preserved for appellate review. *Tompkins,* 774 S.W.2d at 218. Points of error eight and nine are overruled.

The judgment is affirmed.