COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| CARL LAMB, | § | No. 08-17-00154-CR |
| Appellant, | § | Appeal from the |
| v. | § | 34th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20150D01587) |
|  | § |  |

# **O P I N I O N**

Appellant Carl Lamb was convicted of capital murder after he attempted to hire a hit man to kill his wife. On appeal, he challenges the sufficiency of the evidence to support his conviction. He also challenges various evidentiary rulings. We affirm.

## **Background**

Carl Lamb was arrested and held in the El Paso County jail on a felony charge of domestic violence against his wife. Because of two prior felony convictions, if convicted he faced a minimum prison sentence of 25 years. He was unable to post a bond pending trial.

Lamb told his bunkmate that he wanted his wife "taken out," reasoning that "[i]f she wasn't around to show up as a witness, then he'd be able to get off his case." He made notes including

his wife's address and schedule, her physical description, and a description of her car. He indicated he would be willing to provide his mobile phone, worth $500, as a down payment in advance of $150,000 he would pay from life insurance proceeds for his wife's murder. After Lamb raised the topic multiple times, the bunkmate asked his wife to inform the police.

Law enforcement officers interviewed the bunkmate and then gave him a phone number to provide to Lamb as a way to contact an officer who would pose as "Mykal Ruiz," a potential hit man. Lamb signed a property release form authorizing "Ruiz" to receive his mobile phone, keys, and credit cards. He gave his bunkmate a hand-drawn map of his wife's apartment complex and other identifying information. He also signed a hand-written statement that said: "I, Carl Lamb, want Graciela Lamb dead. I am going to pay for it. 500$ & a money out of life insurance." Lamb communicated instructions to Ruiz, using the bunkmate and his wife as intermediaries. Later Lamb called Ruiz directly to discuss details of the transaction, and he called his sister to have her deliver $500 to Ruiz.

Lamb was charged with capital murder for attempting to solicit the murder of his wife. He was convicted and sentenced to 40 years in prison, and he appeals.

**Analysis**

Lamb challenges the sufficiency of the evidence to support his conviction. He also challenges various evidentiary rulings, including the admission of evidence of his prior felony convictions, an arrest warrant, and recorded statements in which he attempted to arrange for his wife's murder.

**I.      Sufficiency of the evidence**

Lamb contends that the evidence was insufficient to support his conviction for capital murder. A criminal conviction must be supported by legally sufficient evidence as to each element

of the offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). A court evaluating whether this standard has been met must review all of the evidence in the light most favorable to the verdict, to decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).

To the extent Lamb attempts to raise a distinct challenge to the factual sufficiency of the evidence by disputing the credibility of his bunkmate, the legal-sufficiency standard described above is the sole standard for reviewing both the legal and factual sufficiency of evidence to support a conviction. *See Adames*, 353 S.W.3d at 859; *Graham v. State*, No. 08-13-00115-CR, 2016 WL 1253460, at *2 (Tex. App.—El Paso Mar. 30, 2016, no pet.). We "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899.

Lamb's only other argument that the evidence was insufficient to support the jury's verdict is that the trial court should not have admitted various evidence, including his prior convictions and allegedly uncorroborated witness testimony. However, a legal-sufficiency review includes all evidence presented to the fact-finder, regardless of whether it was properly admitted. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

A challenge to the sufficiency of the evidence requires identification of at least one element of the offense that a rational trier of fact could not have found satisfied beyond a reasonable doubt. *See Adames*, 353 S.W.3d at 860. Lamb has failed to present any such contention, but instead confined his argument to broadly characterizing evidence as either untrustworthy, weak, or

3

inadmissible. These are not valid arguments to challenge, in the light most favorable to the verdict, the fact-finder's determination that each essential element of the crime was proved beyond a reasonable doubt. Accordingly, we overrule the challenge to the sufficiency of the evidence.

## II. Evidentiary challenges

Lamb's remaining arguments allege error in the admission of evidence at trial. Lamb argues that the trial court should not have admitted evidence of his prior felony convictions, nor should it have admitted evidence of a California arrest warrant that was outstanding at the time he was being held in the El Paso County jail. Finally, he argues that his own statements should have been suppressed because they were obtained as a result of custodial interrogation in violation of his privilege against self-incrimination. We generally review evidentiary rulings for abuse of discretion, and we will not find error in an evidentiary ruling unless it was outside the zone of reasonable disagreement. *See, e.g.*, *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### a. Prior felony convictions

Before trial, Lamb moved in limine to preclude the State from introducing evidence of his prior convictions without first conducting a hearing outside the presence of the jury to evaluate admissibility. The trial court held a hearing on the motion.

The State explained its theory of the case to justify offering evidence of Lamb's two prior felony convictions in California, as part of an effort to establish his motive to have his wife murdered. Lamb had been arrested and was being held on a charge of "assault family violence strangulation." The prosecutor posited that Lamb was aware that if he were convicted, he would not be "eligible for probation, that it was an enhanced charge." Then, at some point after his arrest, he decided "that the best course forward is to kill the victim, his wife." So Lamb approached his

4

bunkmate and asked him to arrange a hit, saying that he was doing it because he had "a strike in California," he was aware that he was "facing a significant amount of time," and "by getting rid of the witness for the strangulation case he was getting rid of the witness in his California case and that, therefore, he wouldn't be facing as much prison time anymore." Thus the State argued that Lamb's motive to kill his wife was to escape prosecution for family violence, under circumstances in which his prior convictions rendered him ineligible for probation and subject to a mandatory minimum prison sentence of 25 years.

The trial court granted the motion in limine in part. The court ruled that the State could introduce evidence that Lamb had two prior felony convictions, but it would have to approach the bench before offering any more detail about what offenses were involved. The court explained that "motive is highly relevant" and "part and parcel to the case," so "its probative effect outweighs its prejudicial effect."

At trial, the State called Lamb's former jail bunkmate as a witness. The bunkmate testified that Lamb told him that he was in jail because of a "family violence case against his wife," and they talked about it "all the time." Lamb talked about "his previous charges" in California, and he said "he couldn't bond out because he had a hold in California." According to the bunkmate, Lamb would talk about his wife, saying that "she put him in jail for something he didn't do," and talking about "some dude that was coming around . . . it was more like a jealousy thing . . . ." The bunkmate testified that Lamb eventually expressed fear that "he would get a harsh sentence because of his charges in California . . . [s]o he wanted her taken out." Pressed to elaborate, the bunkmate explained: "If she wasn't around to show up as a witness, then he'd be able to get off his case. So he wanted her dead."

5

The issue of Lamb's prior convictions arose again when the State presented a fingerprint expert. Before the witness took the stand, there was a discussion outside the presence of the jury. The State had designated as its Exhibit 23 a pen packet that included a chronological history and two abstracts of judgments, one for felony kidnapping and one for felony "false imprisonment w/strike prior." The pen packet also included a fingerprint card. The trial judge stated that he would "introduce the packet" and that he was "inclined not to let that packet go back as an exhibit to the jury." After some further discussion, the trial judge reiterated: "all he's going to do is introduce the packets; is that correct? The documents?" Receiving the prosecutor's confirmation, the judge stated: "As I said, we're not going to read them or show them to the jury. You're just going to identify his fingerprints off of these documents; right?" The prosecutor agreed.

Still outside the presence of the jury, defense counsel conducted a voir dire examination of the fingerprint expert, which prompted further discussion about and review of Exhibit 23. The trial judge then said: "all I'm going to let you do is what I just said at this point . . . [t]hat would have no prejudicial . . . effect . . . if they put those in terms of putting on proof that the prints on [Exhibits] 23 and 24 match and they match to this defendant." A prosecutor asked whether he would "be able to say that they're felony convictions." The judge responded: "Not right now. . . . [b]ut . . . after I think about this . . . then I'll have to see how I'm going to allow this and what form to allow it in or not."

With the fingerprint expert on the stand, the State elicited testimony that the fingerprints in Exhibit 23, which was identified for the jury as "a packet of self-authenticating business records," matched a set of Lamb's fingerprints taken earlier that day on a card marked as Exhibit 24. The prosecutor then stated: "the State would offer Exhibits 23 and 24, subject to the Court's ruling."

6

Defense counsel stated: "Your Honor, I make the objections that I made prior." The trial court responded: "All right. Overruled."

At the beginning of the next day of trial and before the jury came into the courtroom, defense counsel informed the trial court that Lamb had decided not to testify. After some other motions, the prosecutor asked the court to take judicial notice that Lamb had two prior felony convictions in California, and that in Texas a person with two prior felony convictions "is enhanced to a 25-year-to-life punishment range." Lamb's counsel objected "that it is impermissible character evidence and it requires the Court to make a balancing test." The prosecutor then stated that the State wanted Exhibit 23 to be given to the jury, but he understood "that is not what the Court wants to do." The trial court confirmed that understanding and acknowledged that the defense "objected strenuously to that." The judge then explained:

> I am balancing that issue against allowing in the specifics of those felonies against him. . . . I do feel that the harm outweighs the relevance, so I am not allowing that in. I will only allow it in for the purpose of their motive issue. And that's only going to be limited to that there are two prior felony convictions, and one is prior to the other, which would subject him to the habitual statute in Texas, which would be a minimum of 25, maximum of life.

*See generally* TEX.PENAL CODE ANN. §§ 12.42-.425 (authorizing enhanced sentences for repeat and habitual felony offenders). After some further discussion and a review of Exhibit 23, the trial court confirmed its ruling.

The jury entered the courtroom. The State moved that the court take judicial notice of what was previously discussed in lieu of offering Exhibit 23. Defense counsel renewed her previous objections. The trial judge then instructed the jury that he took judicial notice "that the defendant has two prior felony convictions that would subject him to the habitualization statutes of Texas, and if found guilty of the pending assault family violence case against him would subject him to

7

not less than 25 years in prison." This was immediately followed by a limiting instruction that "if you do accept that as true . . . then that evidence was admitted only and solely for the purpose of assisting you, if it does assist you, in determining the motive of the defendant, if any, and for no other purpose."

On appeal, Lamb contends that the trial court abused its discretion by admitting evidence of his prior convictions, which he contends were offered solely as unfairly prejudicial character evidence to demonstrate his criminal history. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX.R.EVID. 404(b)(1). Nevertheless, evidence of prior convictions "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX.R.EVID. 404(b)(2). Still, a court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice. *See* TEX.R.EVID. 403. These rules favor admission, rather than exclusion, of otherwise relevant evidence. *De La Paz*, 279 S.W.3d at 343; *Iglesias v. State*, 564 S.W.3d 461, 468 (Tex. App.—El Paso 2018, no pet.)("it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice"). A trial court's ruling generally will be found to be within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *De La Paz*, 279 S.W.3d at 344.

Lamb suggests that the trial court erred by admitting evidence details of his prior felonies contained in Exhibit 23, the pen packet. The objectionable details identified in Exhibit 23 include abstracts of judgments of convictions for kidnapping and false imprisonment. But to the extent

Lamb alleges that all details contained within the pen packet were admitted in error, the record suggests otherwise. The trial court carefully guided the presentation of evidence concerning the prior convictions, and all details pertaining to those offenses were excluded from evidence other than the information that was communicated to the jury through the instruction about judicially noticed facts. The record demonstrates that the trial judge expressly prohibited the details contained in Exhibit 23 from being communicated to the jury. When the State offered Exhibit 23, it did so "subject to the Court's ruling." When the State moved that the court take judicial notice of the prior felony convictions, the prosecutor stated that it was "in lieu of offering" Exhibit 23. In contrast, Lamb has not presented any record to suggest that despite the foregoing, the jury actually did receive Exhibit 23.

Accordingly, the evidence of prior convictions presented to the jury was limited to the information communicated as judicially noticed facts. That information was limited to the facts that Lamb had "two prior felony convictions that would subject him to the habitualization statutes of Texas, and if found guilty of the pending assault family violence case against him would subject him to not less than 25 years in prison." Lamb does not complain about the accuracy of the substance of the judicially noticed facts or the method of communicating them to the jury. Instead, he objects that the probative value of this evidence was substantially outweighed by its unfairly prejudicial effect. He contends that there was insufficient evidence that the judicially noticed information was related to his motive, because his bunkmate's testimony was uncorroborated and the State did not introduce direct evidence that he "knew or would have known that he had two strikes that would enhance his punishment in the pending family violence case . . . ."

These arguments are interrelated, because the probative value of the evidence of the two prior convictions must be evaluated before it can be determined whether it was substantially

9

outweighed by unfair prejudice. Lamb essentially contends that the State did not prove that he was subjectively aware of the potential legal consequences of his prior convictions, which would be necessary to justify an inference that those consequences motivated him to solicit his wife's murder. And to the extent statements were attributed to Lamb that were consistent with the State's theory of motive, he contends that this could not establish his motive because the evidence was the uncorroborated testimony of his bunkmate. *See* TEX.PENAL CODE ANN. § 15.03 (a person may not be convicted under a theory of criminal solicitation "on the uncorroborated testimony of the person allegedly solicited").

A jury may rely on circumstantial evidence as proof of a defendant's guilt, and motive is a significant circumstance indicating guilt. *See, e.g.*, *Ex parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014); *Porter v. State*, 623 S.W.2d 374, 385–86 (Tex. Crim. App. 1981)("the prosecution may always offer evidence to show motive for the commission of an offense because it is relevant as a circumstance to prove the commission of the offense"). Evidence of prior misconduct consistently has been held to be admissible as circumstantial evidence of motive to commit a charged offense. *See, e.g.*, *Foy v. State*, 593 S.W.2d 707, 708 (Tex. Crim. App. 1980); *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972). In particular, evidence of a suspended or probated sentence for a prior conviction has been held admissible as circumstantial evidence of a motive to avoid apprehension. *See Crane v. State*, 786 S.W.2d 338, 350 (Tex. Crim. App. 1990)(suspended sentences); *Hughes v. State*, 563 S.W.2d 581, 589 (Tex. Crim. App. 1978)(probated sentence).

Lamb's arguments primarily address the strength of the circumstantial evidence of the prior convictions as proof of his motive, rather than the fundamental admissibility of such evidence. No objection was made when the bunkmate testified that Lamb said he was "afraid that he would get

a harsh sentence because of his charges in California." This testimony was corroborated, at least in part, by the judicially noticed facts of Lamb's two prior felony convictions and their legal effect on any sentence that would have resulted from a conviction on the domestic-violence charge. The defense was free to argue to the jury that the bunkmate was not credible, and to argue that the two prior convictions did not compel a conclusion that Lamb was actually aware of their potential legal consequences. The jury was free to decide whether it was likely that Lamb would have been subjectively aware that his "two strikes" rendered him vulnerable to enhanced sentencing if convicted on a third felony offense arising from domestic-violence charges. Whether or not the bunkmate was considered credible, the jury was similarly free to decide whether the judicially noticed facts, assuming they were understood by Lamb, would have motivated him to try to have his wife murdered on a theory that her unavailability as a witness (as a result of being murdered) somehow would have resulted in the dismissal of the pending charges.

But whether weak or strong, whether circumstantial or direct, evidence of motive to commit a crime, if believed by a jury, is highly probative. *See* TEX.R.EVID. 404(b)(2); *Porter*, 623 S.W.2d at 385–86. By excluding all extraneous details about the prior felony convictions other than the bare facts that there were two of them and that they would have affected a conviction on the pending family-violence assault charge by increasing the penalty range to 25-years-to-life, the trial court tailored the evidentiary submission to minimize any possibility of unfair prejudice. Under these circumstances, we conclude that the trial court was well within the scope of its discretion to determine that the probative value of Lamb's two prior felony convictions was not substantially outweighed by unfair prejudice, *see* TEX.R.EVID. 403, 404(b), and to admit the challenged evidence. *See, e.g.*, *Crane*, 786 S.W.2d at 350.

### b. Arrest warrant for extraneous offense

11

Similar to the challenge to evidence of prior convictions, Lamb also challenges the admission into evidence of a warrant for his arrest. He raises the same objections that the warrant was offered solely to prove his propensity to commit crimes and thus should have been excluded pursuant to Rules 403 and 404(b).

The State called a law-enforcement officer as a witness to testify about his investigation of the report from within the jail that Lamb wanted to arrange his wife's murder. On cross-examination, defense counsel asked the officer if he was aware of any conversation Lamb had with his bunkmate regarding his desire "to bond out." The officer said that it had never come up in discussions with the bunkmate, though he had the ability to "look up the system and see what his bond is." Defense counsel then asked if the officer researched "what that information was," and the officer responded: "At that time he had a low bond because he was held on some warrant or something." Counsel then showed the officer a document that reflected a $10,000 bond for the family-violence assault offense charged in El Paso County. The officer testified that depending on the bond company, Lamb could have made the bond by posting "10 to 20 percent," meaning as little as $1,000.

On redirect, the State elicited the officer's testimony that "there was some mention of a no bond," "a warrant out of California," and a "fear that there was no bond coming down." The State then approached the bench and asked to offer into evidence a certified copy of a California warrant for Lamb's arrest. Among other objections, Lamb's counsel argued that the warrant was not relevant to the motive issue and should have been excluded as unfairly prejudicial evidence of an extraneous offense. The trial court asked whether the warrant identified a charge, and the prosecutor stated that sections of the California penal code were identified, though he did not know what offenses were identified. After further discussion at the bench about the relevance of the

12

warrant to Lamb's "ability to post bond and get out of jail," the trial court admitted the arrest warrant. The jury was instructed that the document was being admitted for the limited purpose of "determining the defendant's ability to post this bond and get out of jail and for no other purpose."

As with the evidence of prior felony convictions, an outstanding arrest warrant that tended to establish that Lamb was subject to continued imprisonment pending trial on the family-violence assault charge supported the State's theory of the case: that he was motivated to hire a person to kill his wife because he was unable to do it himself. The warrant also became relevant when defense counsel affirmatively elicited testimony to suggest that Lamb could have bonded out of jail with a payment to a bondsman of as little as $1,000. The warrant did not identify any particular charged offense except by reference to unidentified section numbers of the California penal code, and the trial judge gave a limiting instruction to the jury, specifying that the warrant only could be considered for the purpose of determining Lamb's ability to post a bond and get out of jail.

As with the evidence of the prior felony offenses, the trial court was well within the scope of its discretion to determine that the probative value of the arrest warrant was as evidence relevant to Lamb's motive not substantially outweighed by unfair prejudice, *see* TEX.R.EVID. 403, 404(b), and to admit the challenged evidence. *See, e.g.*, *Crane*, 786 S.W.2d at 350.

### c. Statements to informant and undercover officer

In his final point of error, Lamb argues that the trial court should have excluded evidence of his statements to his bunkmate and to the investigating officer, made after they began to coordinate. Lamb contends that while he was in the custody of the El Paso County Sheriff, the investigating officer used the bunkmate to interrogate him without *Miranda* warnings, in violation of his right against self-incrimination. Lamb thus alleges violations of Articles 38.21-.23 of the

13

Code of Criminal Procedure, as well as the Fourth and Fourteenth Amendments to the United States Constitution.

Courts have consistently rejected arguments such as this one, which attempt to apply *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), and related procedural protections outside the context of coercive custodial interrogation addressed by *Miranda*. As the United States Supreme Court explained in *Illinois v. Perkins*, "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*." 496 U.S. 292, 296, 110 S. Ct. 2394, 2397 (1990). *Miranda* warnings are not required "whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent." *Id*. at 297, 110 S. Ct. at 2397. "*Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner." *Id*.

The codification of *Miranda* principles in the Texas Code of Criminal Procedure regulates the use of statements made by an accused "as a result of custodial interrogation"—indeed, Article 38.22 expressly states that it does not preclude "the admission of . . . a statement that does not stem from custodial interrogation." TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2, 3, 5. Texas courts construe "custody" for purposes of Article 38.22 consistent with the meaning of "custody" for purposes of *Miranda*. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

Lamb's argument on appeal did not address or attempt to distinguish *Perkins*, despite the fact that it was the focus of the State's response to the motion to suppress in the trial court. Likewise, Lamb has made no effort to distinguish *Norrid v. State*, which was relied upon by the trial court as a factually similar precedent, and which applied *Perkins* and held that no Article 38.22 warnings were required when a jail inmate voluntarily communicated with a cellmate and an

14

undercover officer to voluntarily solicit them to commit capital murder. 925 S.W.2d 342, 346 (Tex. App.—Fort Worth 1996, no pet.).

We overrule Lamb's challenge to the trial court's admission of his voluntary statements to his jail bunkmate and an undercover officer, attempting to arrange a murder for hire. To the extent Lamb also contends that he was entitled to an Article 38.23 jury instruction based on his complaint that he did not receive *Miranda* warnings, we overrule that complaint as well.

## Conclusion

Having overruled all challenges to the sufficiency of the evidence, as well as all challenges to the trial court's evidentiary rulings, we affirm the judgment of conviction.

August 9, 2019

MICHAEL MASSENGALE, Former Justice

Before McClure, C.J., Palafox, J., and Massengale, Former Justice
Massengale, Former Justice (Sitting by Assignment)

(Do Not Publish)

15