ZARA BOULDIN v. THE STATE.

No. 5835. Decided May 26, 1920.

1.—Robbery—Firearms—Confession of Co-defendant.

The acts and conduct of co-conspirator, after the transaction, are not admissible as a general rule, and the confessions, therefore, of the co-defendant, narrating post events in which the co-conspirator participated, was not admissible against the defendant. Following Choice v. State, 52 Texas Crim. Rep., 287, and other cases.

2.—Same—Evidence—Conclusion of Witness—Declaration of Third Parties.

Where, upon trial of robbery by firearms in which it is alleged defendant and companion participated, the sheriff should not have been permitted to testify that said companion suited the description of the party described to him by the main prosecuting witness; the latter being available to testify.

3.—Same—Evidence—Declarations of Third Parties—Silence of Defendant.

Where, upon trial of robbery by firearms, it developed that defendant and others were arrested, one of whom was released, while defendant was under arrest, the latter would not be bound by anything the sheriff may have said in his presence why he discharged said third party from custody.

4.—Same—Feeble-minded Witness—Insanity—Incompetent Witness.

Upon trial of robbery by firearms, it was the theory of defendant that the chief prosecuting witness claimed to have been robbed, was, if not insane, idiotic or feeble-minded, and offered testimony to this effect, he should have been allowed to do so. Following Myers v. State, 37 Texas Crim. Rep., 2C8; as such feeble-minded condition of the witness may have impaired or impeached his credibility as a witness; the defendant should also have been allowed to show that the mother of said witness was an idiot.

Appeal from the District Court of Matagorda. Tried below before the Honorable M. S. Munson.

Appeal from a conviction of robbery by firearms. Penalty: five years imprisonment in the penitentiary.

The opinion states the case.

*W. S. Holman* and *C. M. Gaines,* for appellant.—On question of confession of co-defendant: Draper v. State, 22 Texas, 401; Couch v. State, 126 S. W. Rep., 867; Lauderdale v. State, 19 S. W. Rep., 679.

On question of mental competency of witness: Plummer v. State, 218 S. W. Rep., 499.

On question of sheriff's declaration on releasing party charged: Johnson v. State, 218 S. W. Rep., 496.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of insanity of witness: Brice v. State, 162 S. W. Rep , 874.

DAVIDSON, PRESIDING JUDGE.—This conviction was had for an alleged robbery by firearms. This is a companion case to Hilliard v. State, 87 Texas Crim. Rep., 15, this day decided. The facts are substantially the same in both cases.

The theory of the State was that appellant and Hilliard robbed a party named Weldon. Weldon testified that on the night he was robbed he was at a cold-drink stand and treated appellant, and displayed some money; that they went thence to a house occupied by Hilliard, stopped for a moment or so; that appellant and Hilliard had a conversation; they went thence to another house, stopped a moment and went to the place of the alleged robbery; that when they reached

this place near the depot they stopped to attend a call of nature, when a party came upon them, presented a pistol and demanded they put their money in a hat which he presented; that appellant placed what money he had in it, and that he, Weldon, did the same thing and they all separated. It seems that Weldon did not identify Hilliard as the party who presented the pistol, but gave a description of his costume. Among other things, he said he was wearing a certain described hat; that when the robber left, Weldon remarked to appellant that he was going to the sheriff and have appellant arrested, believing that he was connected with the robbery. This was denied by appellant. They separated; appellant went home and went to bed. Appellant's testimony is to the effect that Weldon desired to find a woman with whom to spend the night; that they went to the house where Hilliard was stopping to find a woman named Hughes; that when they reached the house they ascertained the fact that she had an engagement with Hilliard; that they then went to another house hunting another woman. When they reached that point they ascertained that she had an engagement, and in both instances the men were present. He says they left, going to another part of the town in search of girls and reached the point where they were robbed. He describes the acts and incidents of the robbery about as did Weldon.

Later during the night the sheriff went to appellant's home and arrested him. He also went to the house occupied by Hilliard and arrested a man named Harris and carried him to jail. This was on such information as he obtained from Weldon. Hilliard was present at the house at the time of the arrest of Harris and remained. After reaching the jail Harris was not incarcerated but was permitted by the sheriff to go free. Subsequently he arrested Hilliard. After arresting Hilliard he obtained what is shown in the record to be a confession from Hilliard under circumstances that would render it clearly inadmissible, except for the fact the sheriff said by reason of the confession he discovered or recovered a certain amount of money in pursuance of this information. It may be stated at this point that this money was not identified as the money taken from Weldon. If so, it was so indefinite that it is a serious question as to whether this was the money taken from Weldon. He also found a pistol later at the residence of Hilliard's father which had been recently discharged. It is asserted by Weldon that the man who robbed him fired one shot after the robbery was committed. It is unnecessary in this case to discuss the preliminaries and the predicate shown by the State for its introduction. Appellant was not present when the confession was made, was in jail, had no connection with it, and the confession did not implicate him. The various questions raised with reference to these matters are not discussed for the broader reason that this confession as it came was not introducible against the defendant. The State's theory was that appellant was criminally connected with Hilliard in the robbery; that they planned it, and that Hilliard robbed

Weldon in pursuance of that agreement, and appellant was present. There is no contention that appellant had any of the money taken from Weldon. The evidence in this connection, to say the least of it, is not of a very cogent nature. Appellant was with Weldon when he went to the two houses mentioned, was with him at the time of the robbery, and had had a conversation with Hilliard at the house where the woman Hughes lived, whom he says they went to see to make an engagement for Weldon. This is weak evidence of a conspiracy to rob Weldon, but in any event the conspiracy could not be proved by the confession of Hilliard even had he implicated appellant in his confession. It was but the narration of past events in which Hilliard participated. The acts and conduct of a co-conspirator after the transaction are not admissible as a general rule, and under the cases of Choice v. State, 52 Texas Crim. Rep., 287 and Spencer v. State, 52 Texas Crim. Rep., 291, this character of testimony would not be admissible. See also Draper v. State, 22 Texas 401; Couch v. State, 58 Texas Crim. Rep., 505; Lauderdale v. State, 31 Texas Crim. Rep.. 46; Branch's Crim. Law, sec. 241, p. 133. We are of opinion, therefore, that the confession of Hilliard under the circumstances stated was not admissible against appellant. There are several bills of exceptions with reference to this, but it is not thought necessary to discuss them further than stated, because this confession was not admissible against appellant.

While the sheriff was testifying he was permitted over objections to state that Hilliard suited the description of the party described to him by prosecuting witness Weldon. We think this testimony was inadmissible. It was but his conclusion that Hilliard was the man described by Weldon. If Weldon could describe Hilliard to the jury, this was permissible, but the State could not introduce the sheriff's conclusion, formed upon information received from Weldon, that Hilliard suited the description of the man as given by Weldon.

The sheriff was permitted to testify as to what he told Harris after he arrested him. This statement to Harris was made in the presence of the defendant, and the question was asked as to whether the sheriff stated to Harris in appellant's presence whether he would let him go home or not. The sheriff replied: "Well, he said he didn't know anything about it, was there asleep and had nothing to do with it. But that wasn't my reason for turning him loose, not what he had to say about it." In this same connection appellant proposed to prove by the defendant that in his presence the sheriff stated to Harris that he, Harris, was the man who committed the alleged robbery and that he arrested him because he, the sheriff, believed he was the man who committed the robbery and fitted his description. Without going into a discussion of this matter we think the sheriff's testimony ought not to have been permitted. Appellant was under arrest and would not be bound by anything the sheriff may have said in his presence. The

sheriff's conclusion, and his statement as to that conclusion that Harris was or was not one of the parties implicated, was not legitimate testimony, and especially the act of the sheriff in discharging Harris from custody after Harris made the statements imputed above men tioned. Upon another trial we are of opinion this testimony should not be permitted to go before the jury.

There are several bills of exception in the record to the exclusion of testimony offered by appellant. It was the theory of appellant that the prosecuting witness, Weldon, was, if not insane, idiotic or feeble-minded. Appellant should have been permitted to make proof that the witness was idiotic and, therefore, incompetent as a witness. The statute provides that insane people shall not be permitted to testify. It was admissible for another purpose. If he was not insane or idiotic so as not to be able to testify still such testimony could be used as impeachment of the witness upon the same theory that a witness could be shown to be drunk when the occurrences about which he testified did occur. It was held in an opinion by Judge Hurt in Myers v. State, 37 Texas Crim. Rep., 208, that drunkenness of the party at the time of the occurrences about which he was testifying could be shown, and to the same effect are the authorities generally. It seems to be a well settled rule that the feeble-minded condition of the witness may be shown to impair or impeach his credit as a witness. See 40 Cyc. 2574 and 2575, and note with collated authorities. 1 Wharton Crim. Ev., p. 750. It is laid down by these authorities that the mental capacity of the witness is the proper subject of consideration and impeachment as bearing upon his credibility. 40 Cyc. 2573 and note 34. See Wren v. Howland, 33 Texas Civ. App., 87. It is also laid down by these authorities that lack of intelligence may be shown as tending to discredit the witness as to his credibility and the weight to be given his testimony. 40 Cyc. 2573, note 75. We are of opinion that the court should have permitted this testimony to go to the jury. Appellant also offered evidence to show that the mother of Weldon was an idiot. If it was sought to show that Weldon was insane, the fact that his mother was crazy or an idiot would be clearly the subject of investigation and proof. Insanity in the family of the witness would be the subject of investigation if the question was one of proving the insanity of the witness. This is unquestionably so where the question of insanity is raised upon the trial of a person accused of crime We see no valid reason why such testimony, being legitimate to show the insanity of the witness or the accused, as the case may be, would not be legitimate to prove as impairing the credibility or strength of the testimony of the supposed insane or idiotic witness.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*