Levoy Carl GILSTRAP, Appellant,

v.

The STATE of Texas, State.

No. 2-96-117-CR.

Court of Appeals of Texas,
Fort Worth.

March 27, 1997.

---

David A. Pearson, IV, Fort Worth, for appellant.

Tim Curry, Crim. District Attorney, Charles M. Mallin, Chief of Appellate Division, David M. Curl, Carol Kerr, Terri Daniel, Asst. Crim. District Attorneys, Fort Worth, for state.

Before POFF, J. (Sitting by Assignment), and BRIGHAM and HOLMAN, JJ.

## OPINION

PER CURIAM.

Levoy Carl Gilstrap, Appellant, was charged by information with the misdemeanor offense of Assault–Bodily Injury. The appellant entered his plea of not guilty but a jury found him guilty of Assault–Bodily Injury. The jury also assessed his punishment at 30 days in jail and a $450.00 fine. The appellant perfected his appeal and brings three points of error for our consideration. In his first two points of error the appellant complains that the court did not permit him to cross-examine the complainant concerning her belief that the appellant's sister had placed a "witchcraft hex" on the complainant's parakeet. In the third point of error the appellant complains of the court's failure to enforce a plea bargain he alleges he made with the State. The appellant contends the Court erred in failing to dismiss the case or in failing to require the State to specifically perform on the alleged plea bargain. Finding that the court did not err by limiting the appellant's cross-examination, or by failing to dismiss the information or specifically enforce the plea bargain, we overrule all points of error and affirm the judgment.

Since the appellant does not contest the sufficiency of the evidence our factual rendition will be brief. Suffice it to say that the jury believed that the appellant hit and slapped his ex-girlfriend, Donna Dunaway, as alleged in the information. Dunaway also testified that the appellant twisted her arm and threw her to the ground. She sought medical attention for injuries to her head, her shoulder and her hand. An Emergency Medical Technician testified that he treated Dunaway for her injuries. She was hospitalized for about six hours.

During the cross-examination of Dunaway, she was asked about a phone message she left on the appellant's answering machine about two weeks after the assault. The State objected to the line of questioning, the jury was retired, and the appellant then was permitted to question Dunaway about the call. When asked if she left a message on the appellant's answering machine accusing

his sister of killing one of her parakeets with a voodoo hex, Dunaway could not recall making such allegations. The appellant then played the recorded phone message in court, and Dunaway admitted it was her voice, but she did not recall when she left the message. The portion of the record quoted in the State's brief, indicates that Dunaway (1) admitted it was her voice on the tape *and* (2) that she "left", i.e., made the call. She merely stated that she did not remember the date she left the message. The recording did contain an allegation that the appellant's sister killed one of Dunaway's parakeets with witchcraft hexes. At the conclusion of the hearing the State renewed its objection to any questions concerning Dunaway's opinion of how her bird died. The objection was sustained and the appellant perfected his bill.

 In his first point of error the appellant contends the trial court erred in denying him the opportunity to cross-examine Dunaway concerning her statement that her bird had been killed by the appellant's sister placing a hex on it. The appellant contends such a belief is relevant to Dunaway's credibility because it reflects on her mental capacity.[1] The appellant noted at trial that he did not seek to attack Dunaway's veracity or truthfulness. He therefore concludes that Rule 608(b) Tex.R.Crim. Evid. does not preclude his cross-examining Dunaway on this specific act. Since Dunaway's statement concerning the bird was the only evidence the appellant offered concerning Dunaway's mental capacity, the appellant contends the court did not unduly limit his cross-examination, but rather totally precluded his cross-examination on the issue of Dunaway's mental capacity.

The appellant contends that a witness' mental capacity is a proper subject for cross-examination and defects in mental capacity can be shown by extrinsic evidence. *Virts v. State,* 739 S.W.2d 25, 29 (Tex.Crim.App. 1987). He also notes that "the feeble-minded condition of the witness may be shown to impair or impeach his credit as a witness." *Bouldin v. State,* 87 Tex.Crim. 419, 222 S.W.

555, 557 (Tex.Crim.App.1920). The trial judge determines the competency of the witness, but the jury is entitled to hear evidence as to the mental status of the witness. *Saucier v. State,* 156 Tex.Crim. 301, 235 S.W.2d 903, 915 (Tex.Crim.App.1950), *cert. denied,* 341 U.S. 949, 71 S.Ct. 1016, 95 L.Ed. 1372 (1951).

The State does not disagree with the appellant's basic premise that there is precedent which supports a party's right to impeach a witness on perceptual incapacity caused by mental illness. The State contends, however, that the appellant failed to establish a nexus between Dunaway's statement that a hex killed her bird and an inability on Dunaway's part to accurately observe the facts surrounding the assault, to remember the facts, and accurately and truthfully relate them in court. The State contends that the appellant failed to demonstrate that Dunaway was mentally incapacitated at the time of the assault or at the time of trial. *Ramirez v. State,* 802 S.W.2d 674, 676 (Tex. Crim.App.1990); *Virts,* 739 S.W.2d at 30; *Drone v. State,* 906 S.W.2d 608, 615–16 (Tex. App.—Austin 1995, pet ref'd).

The State also contends that there is no evidence that a belief in "hexes" is any evidence of mental incapacity or mental illness. The State argues that simply because a witness has beliefs at odds with modern dogma is no evidence of mental illness. The appellant argues however, that mental illness need not rise to the level of treatment or confinement for it to be a matter of relevant inquiry on cross-examination. *United States v. Moore,* 786 F.2d 1308 (5th Cir.1986); *Virts,* 739 S.W.2d at 30. Thus evidence of mental illness is admissible "provided that such mental illness or disturbance is such that it might tend to reflect upon the witness' credibility." *Virts,* 739 S.W.2d at 30. We therefore find the State to be correct in focusing our attention not on the witness' belief, but rather on the evidence that the belief would inhibit her ability to comprehend the facts she observed

---

1. We can not agree with the State that point of error number one is multifarious, for if in fact the jury found the witness was mentally ill such a finding would affect the witness' credibility. We do agree with the State however, that the credi-

bility issue need not be addressed, for the appellant waived the issue when he assured the trial court that the evidence was not offered as an independent attack on the witness' truthfulness, veracity, or credibility.

and then be able to rationally and accurately relate those facts in court.

The term mental illness is relative in force, there being a wide range of severity, from mere nervousness and mild transient situation personality disorders through the psycho-neuroses to the thoroughly debilitating psychoses. *Id.* at 30. In deciding whether evidence concerning the fact that the witness has suffered a recent mental illness is admissible, great deference must be given to the trial judge's initial decision, given the imponderables of mental illness and mental disturbances. Each case must therefore be decided on an ad hoc basis. *Id.* at 28.

Viewing Dunaway's condition in the light of the teachings of *Virts,* we find no other evidence of mental illness or mental disturbance other than her belief that her bird died as a result of the appellant's sister placing a hex on the bird. While such a belief might be relevant if the appellant were charged with killing the bird, we fail to see how this belief would have interfered with Dunaway's ability to relate the fact that the appellant assaulted her. The appellant offered no evidence that the belief in hexes affected Dunaway's ability to observe the assault, remember the facts, or truthfully and accurately state the facts in court. Unlike the facts in *Virts,* the appellant was unable to show that Dunaway had a persistent disabling disturbance of her mental and/or emotional equilibrium. The appellant argues that Dunaway's belief in "witchcraft hexes" standing alone is evidence of such a mental illness or mental disturbance that would affect her credibility. We disagree.

We find Dunaway's belief in hexes to be at best marginally relevant. We also find a great probability of prejudice if the jury learned of Dunaway's unorthodox belief. Such evidence would not have convinced the jury that Dunaway was less credible due to a mental illness, but rather it would have created an animus toward the witness, as a person who held unpopular beliefs. We therefore find that the relevancy of the matter is far outweighed by prejudicial effect.

The trial judge thus did not abuse his discretion in denying the appellant's request to cross-examine Dunaway concerning her statement about the hex that she believed killed her bird. Point of error number one is overruled.

■ In his second point of error the appellant contends the court erred in limiting his cross-examination of Dunaway by excluding from evidence matters touching upon her bias and ill feelings toward him, and by excluding evidence touching upon her credibility as a witness.[2] Once again the appellant is complaining that he was not allowed to cross-examine Dunaway about her belief that his sister killed her parakeet by placing a hex on the bird. In point of error two the appellant does not focus on Dunaway's belief in hexes, but rather he focuses on the supposed animus and ill will toward the appellant due to the fact that Dunaway believed his sister caused the bird's death.

In the second point of error the parties agree on the basic principals of law. Bias is a legitimate area of inquiry on cross-examination. *Koehler v. State,* 679 S.W.2d 6, 9 (Tex.Crim.App.1984); *Coleman v. State,* 545 S.W.2d 831, 833 (Tex.Crim.App.1977). Likewise, bias and animus can provide a motive for a witness' testimony. *Moody v. State,* 827 S.W.2d 875, 891 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 839, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992).

The appellant contends he was improperly denied the right to show that Dunaway was biased against him, because she thought his sister had killed her parakeet. Unlike point of error one, the appellant does not claim he was totally precluded from offering evidence of Dunaway's bias. Appellant had offered evidence that on at least two occasions that Dunaway had threatened to drive by his home and shoot it up. The record also contained evidence of the anger and frustration that accompanies the termination of a domestic relationship. There was an abundance of animus and ill will on both the part of Dunaway and the appellant. The State thus ar-

2. Once again we cannot agree that the point of error is multifarious. If in fact the jury believed a witness was biased, then that would affect the witness' credibility. Also as in point one we do not find that the appellant is entitled to a separate review on the question of credibility.

gues that the evidence about the bird's death was marginally relevant and essentially repetitive and cumulative. We agree on both counts.

The evidence is marginally relevant for the appellant sought to have the jury infer that Dunaway had a reason to be angry at the appellant's sister due to the death of her bird, and Dunaway's anger had been transferred to the appellant to such an extent that it had colored and influenced her testimony. The evidence is less relevant on the issue of bias, considering that the phone call the appellant sought to use as evidence of the bias came after the assault. It would thus be difficult to argue that Dunaway filed the assault complaint in retaliation for the bird's death. It would also be difficult to argue that the version of the assault that she gave to the police officers and the Emergency Medical Service personnel was colored by her anger over the death of the bird. At best it could be argued that the bias caused by the bird's death caused Dunaway to embellish her testimony at trial.

Of the testimony offered, it is clear that the statements regarding the hex placed on the bird had no relevance on the issue of bias or ill will. Any bias or ill will was caused by death of the bird, not the hex. The testimony concerning the hex only served to prejudice the jury against Dunaway, and cast her in the light of a person who holds unpopular or unorthodox beliefs. The prejudicial effect of such testimony far outweighs probative value on the question of bias.

The probative value of the testimony is also diminished by the fact that it was cumulative. The record already contained evidence of the threats and violence the parties had directed against one another. As in most cases involving assaults, there was evidence of animus and fear on the part of the victim, Dunaway. Dunaway in fact had testified that she was afraid of the appellant. Her father also had testified that Dunaway and the appellant were no longer friends. Although the appellant never directly asked Dunaway if she was biased, we find ample evidence in the record from which the jury could have concluded that due to the assault, Dunaway was biased against him. In cases where bias is evidence in the record, additional evidence of bias may be excluded. *Araiza v. State,* 929 S.W.2d 552, 557 (Tex. App.—San Antonio, 1996, pet. ref'd).

We thus agree with the State that the evidence offered was marginally relevant and cumulative. Under such circumstances the trial judge is authorized to limit the appellant's right of cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *Carroll v. State,* 916 S.W.2d 494, 498 (Tex.Crim. App.1996). We find that the trial court did not abuse its discretion in limiting the appellant's right to cross-examine Dunaway on the matter of the bird's death. Point of error number two is therefore overruled.

In his third point of error the appellant contends that the court erred in denying his motion to either dismiss the information against him or order the State to recommend that he receive one year of deferred adjudication probation. The appellant contends he was entitled to this relief, because he was promised that the Tarrant County District Attorney would make such a recommendation as part of a plea bargain in a Dallas County aggravated assault case, in which he entered a plea of guilty. As part of the plea bargain in the Dallas County case it was agreed that Dunaway, who was also the victim in the Dallas County aggravated assault, would ask the Tarrant County District Attorney to recommend the deferred adjudication probation in appellant's Tarrant County assault case. Dunaway also agreed that she would receive no restitution in the Tarrant County case. Dunaway honored her commitment and asked the Tarrant County District Attorney to recommend the one year deferred adjudication probation for the appellant. She also did not request any restitution. In spite of Dunaway's request, the Tarrant County District Attorney did not make the requested recommendation.

The appellant reasons that since the Dallas County District Attorney and the Tarrant County District Attorney are both agents of the State of Texas, the State, through district courts, is bound to require the Tarrant County District Attorney to honor the agreement made by the Dallas County District Attorney

and ratified by the Dallas County Court in accepting the appellant's plea of guilty. For authority the appellant cites *United States v. Carter*, 454 F.2d 426, 427–28 (4th Cir.1972), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974) where the appellant contends the court held that one U.S. Attorney's office could not breach a promise made by another U.S. Attorney's office. We find no such authority in Texas, and we do not see the wisdom in permitting one district attorney's office to unilaterally bind another district attorney's office.[3]

The appellant's complaint is moot, however, for the appellant has mischaracterized the nature of the agreement and alleged a breach that did not occur. The Dallas County District Attorney never promised the appellant that the Tarrant County District Attorney would recommend a sentence of deferred adjudication probation. Neither did Dunaway ever make such a promise or guarantee. The only commitment made to the appellant was that Dunaway would ask the Tarrant County District Attorney to recommend to the court that the appellant's punishment be a one year term or adjudicated probation. The record reflects that this commitment was honored, when Dunaway made the request. The record also reflects that Dunaway did not seek any more restitution.

Since all of the commitments made to the appellant were honored, there was no breach of any agreement. The appellant was never promised by anyone that the Tarrant County District Attorney would in fact make the requested recommendations. The Tarrant County District Attorney's failure to make the recommendation therefore can not form the basis for specific performance, nor can it be a ground for dismissing the information. The trial court therefore did not err in overruling the appellant's motion. Point of error number three is overruled.

All points of error having been overruled, the judgment is affirmed.

---

**3.** Binding agreements between district attorneys concerning criminal cases can be made, but they must be in writing. See Tex. Penal Code Ann. § 12.45 (Vernon 1994); *see also* Tex.Code Crim. Proc.Ann. art. 32.02 (Vernon 1989); *Wilkins v. State*, 574 S.W.2d 106, 109 (Tex.Crim.App.1978).