In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00194-CR


______________________________




TOMMIE LOYD PRATER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


 Fannin County, Texas


Trial Court No. 22065




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On the strength of testimony by Carolyn Ridling, a sexual assault nurse examiner, and by
Tommie Loyd Prater's wife, Jennifer--each reporting what ten-year-old T.L.P. allegedly told
them--and in spite of partially conflicting trial testimony by T.L.P., a jury found that Prater had
penetrated T.L.P.'s vagina with his finger, thus finding Prater guilty of aggravated sexual assault of
a child under fourteen years of age. From his conviction and sentence of life imprisonment and a
$10,000.00 fine, (1) Prater appeals contending the evidence is legally and factually insufficient to
support his conviction. Finding sufficient evidence, we affirm the judgment.

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). Even if contradictory
witness testimony may be compelling, the jury is the sole judge of what weight to give such
testimony. Id. We should afford "almost complete deference to a jury's decision when that decision
is based on an evaluation of credibility." Id. (citing Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006)).

 Three individuals provided testimony relevant to this appeal, T.L.P. herself and two
individuals to whom T.L.P. had spoken about the events in question.

 T.L.P. testified at trial that Prater had touched her "private parts" on a bed in their house and
had also done so while she was "in the pool." In her testimony, she also said the touchings occurred
only twice. She testified that he had touched her on her privates through her clothing. When T.L.P.
was pointedly asked by the State whether Prater put his finger inside or outside, her answer was
"outside." 

 Ridling testified that, while she was examining T.L.P., the child told her that Prater "set me
on his lap in the pool and put his finger inside me." She also testified that T.L.P. had a ruptured
septate hymen that would have been caused by some kind of penetration of her vagina.

 Prater's wife, Jennifer, testified that T.L.P. had said that Prater stuck a finger inside her. This provides evidence, both legally and factually sufficient, that Prater touched T.L.P.'s
private parts and that he penetrated her body in some way with his finger. But does it establish
digital penetration of her vagina? Prater argues that it does not. He is correct to the extent that no
witness directly said that Prater penetrated T.L.P.'s vagina with his finger. The context of the
testimony involves touching of her "private parts" without specific explanation of T.L.P.'s
understanding of that term. The only testimony that specifically connects the digital penetration to
the vagina is the nurse's testimony that T.L.P. had a ruptured hymen, indicating penetration of her
vagina at some point in the past.

 Nevertheless, there was clear testimony that T.L.P. had previously told the other two
witnesses that Prater put his finger inside her. We recognize that in the context of questioning of a
young child, it is not unusual for the terms used to be somewhat imprecise. Although the evidence
could certainly be stronger, we cannot say that the jury's determination is without adequate support
in the evidence. We overrule Prater's contentions of error.






 We affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 8, 2008

Date Decided: September 15, 2008


Do Not Publish



1. In a single brief to this Court, Prater combines argument in his eight appeals from eight jury
convictions for various sex-related activities. In this appeal, from trial court number 22065, he was
convicted of aggravated sexual assault of T.L.P.--a child under fourteen years of age--by
penetrating her vagina with his finger on or about August 2, 2006. His other appeals are below:

 Our Cause No. Victim Charge

 06-07-00187-CR A.C.P. Indecency with a child by sexual contact

 06-07-00188-CR A.C.P. Sexual assault of a child

 06-07-00189-CR A.C.P. Sexual assault of a child

 06-07-00190-CR A.C.P. Sexual assault of a child

 06-07-00191-CR A.C.P. Sexual assault of a child

 06-07-00192-CR A.C.P. Sexual assault of a child

 06-07-00193-CR J.A.P. Indecency with a child by sexual contact.


im. App. 1987). 

 The State argues Perry has not preserved an issue regarding the denial of the constitutional
right of confrontation. We agree. The Texas Court of Criminal Appeals has made it clear that an
objection or argument that evidence is admissible to attack a witness' credibility may involve both
the constitutional right of confrontation or evidentiary rules. Reyna v. State, 168 S.W.3d 173, 179
(Tex. Crim. App. 2005). In order to assert the confrontation objection, it is necessary that a party
clearly articulate that the Confrontation Clause demanded admission of the evidence to allow the trial
court to rule on the issue. Id. at 179-80. In failing to present such an argument or objection to the
trial court, the confrontation issue was not preserved for appeal. 

 The question remaining is whether Perry preserved, by his objection and proffer, the broader
issue of credibility and impeachment under the Texas Rules of Evidence. At the trial court, Perry
proffered the cross-examination of White for the purpose of testing White's credibility. In his appeal
point, Perry argues, "Appellant was denied his right to confrontation of witnesses by being denied
to [sic] impeach the credibility of co-defendant and witness Dolwin White, provided by U.S. Const.
VI and Tex. Const. art. I, sec. 10." However, in the summary of the argument and in the body of it,
Perry refers to his denial of the right to test the credibility of White. He cites Rule 601 of the Texas
Rules of Evidence for the proposition that every witness is presumed competent to testify and argues
that the issue was not competency to testify, but was of credibility and the mental state of White. 
So, while Perry did not preserve an issue as to the Confrontation Clause of the United States
Constitution, he did preserve the broader issue of credibility and impeachment as provided in the
Texas Rules of Evidence. His argument to this Court includes a complaint that his right to test the
witness' credibility was denied. Several Rules of Evidence mention or allude to testing a witness'
credibility or to impeaching the witness. See, e.g., Tex. R. Evid. 607 ("The credibility of a witness
may be attacked by any party . . . ."), 611(b) ("A witness may be cross-examined on any matter
relevant to any issue in the case, including credibility."). The Texas Court of Criminal Appeals has
pointed out that an objection or proffer grounded on a credibility issue may have its origin in both
the right of confrontation as well as the Rules of Evidence. Reyna, 168 S.W.3d at 179. During the
argument to the trial court, a discussion of Rule 608 was presented by both Perry and the State. The
trial court based its decision to exclude the testimony on the conclusion that this testimony violated
Rule 608(b) (specific instances of conduct) and Rule 403 (probative value substantially outweighs
the prejudicial effect). We believe that Perry has preserved the issue of denial of his right to test the
credibility of the witness based on the Texas Rules of Evidence. 

 We begin by pointing out the trial court has discretion in the admission or exclusion of
evidence. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); Montgomery v. State,
810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). We will not reverse a trial court whose ruling was
within the "zone of reasonable disagreement." Green, 934 S.W.2d at 102; Montgomery, 810 S.W.2d
at 391 (op. on reh'g).

 Because of the Texas Court of Criminal Appeals' opinion in Reyna, we have found that the
constitutional right of confrontation was not preserved for appeal. Most cases we have found use
the Confrontation Clause as the basis for analyzing the denial of the right to test the credibility of a
witness through cross-examination. Whether viewing the evidence through the prism of the
Confrontation Clause or the Rules of Evidence, in each instance the issue--credibility--is the same. 
Therefore, we will use the same analysis in determining if this is a denial of the right to test the
credibility of the witness as is done when determining the same issue based on the Confrontation
Clause. If there is error presented, the analysis of the harmfulness of that error will be different for
an evidentiary rule violation (nonconstitutional error) than for a confrontation violation
(constitutional error). 

 The law is well settled that the credibility of the witness, and the weight to be given his or
her testimony, is a matter for the jury to decide. See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979). Equally established is the limitation placed on cross-examination by evidentiary
Rule 608(b), which precludes attacks on a witness' credibility by way of specific instances of
conduct, except for certain criminal convictions. (1) However, the jury is entitled to hear evidence as
to the mental status of the witness and the extent of his or her mental impairment. See Saucier v.
State, 156 Tex. Crim. 301, 235 S.W.2d 903, 915-16 (1950) (op. on reh'g). "[T]he mental capacity
of the witness is the proper subject of consideration and impeachment as bearing upon his
credibility." Bouldin v. State, 87 Tex. Crim. 419, 222 S.W. 555, 557 (1920). Therefore, the right
to cross-examination includes the right to impeach the witness with evidence that might go to any
impairment or disability affecting the witness' credibility. See Saglimbeni v. State, 100 S.W.3d 429,
435 (Tex. App.--San Antonio 2002, pet. ref'd) (citing Virts, 739 S.W.2d at 29); see also Sidney v.
State, 753 S.W.2d 410, 413 (Tex. App.--Houston [14th Dist.] 1986, pet. ref'd) (trial court should
have allowed appellant to cross-examine witness on the duration, extent, and treatment of his mental
condition).

 Cross-examination of a testifying State's witness to show that the witness has suffered a
recent mental illness or disturbance is proper, provided that such mental illness or disturbance is such
that it might tend to reflect on the witness' credibility. Virts, 739 S.W.2d at 30. Virts wished to
question his accomplice codefendant. The codefendant witness had committed herself to a mental
institution for four to six weeks and received outpatient treatment for up to eight months; Virts was
not able to question the witness about those facts, a possible suicide attempt, or evaluations by three
mental health professionals and a week of inpatient treatment at a mental institution (these last,
following the murder charges). Id. The Texas Court of Criminal Appeals held that Virts "should
have been permitted to at least broach the subject of [the codefendant witness'] recent mental
problems, that she might have had prior to and after the events that occurred inside [the murder
scene], in the presence of the jury." Id.

 The Beaumont Court of Appeals used the reasoning and analysis from Virts in a similar, but
notably different, situation. Scott v. State, 162 S.W.3d 397, 401 (Tex. App.--Beaumont 2005, pet.
ref'd). The victim's father was on medication to keep him "from being moody." He had been
admitted to the mental hospitals in Rusk and Palestine for periods of up to two weeks. While some
of these hospital admissions occurred "years ago," at least two occurred after the alleged abuse of
the witness' son. Id. at 400-01. At the time of his testimony, the witness was under a physician's
care and taking medication for his condition, which he described as a chemical imbalance. Id. He
said he was consistent in taking his medications, unless he ran out. The medications did not affect
his vision or ability to think. Regarding the night about which he was to offer testimony, he said he
had not taken his medication that day because he was "stable" and his doctor had instructed him to
quit taking the medicine two months prior. Id. The reviewing court pointed out that, while the
evidence did show that the witness' condition was ongoing, nothing was admitted to prove that the
condition affected the witness' credibility. Therefore, the court of appeals found no abuse of
discretion in the trial court's decision to exclude this evidence. Id. at 401-02. 

 In Norrid v. State, 925 S.W.2d 342, 346 (Tex. App.--Fort Worth 1996, no pet.), the
defendant sought to cross-examine a victim about her psychological treatment and medications. The
Norrid court distinguished Virts, stating it was necessary for Virts to cross-examine his codefendant
because her recent mental illness may have affected her credibility and memory of the events at
issue. Id. at 347. However, because the victim in Norrid was not a codefendant and presumably had
no knowledge of the defendant's crime until informed by authorities, the court found that her mental
state was a collateral matter. Id. 

 We have discussed the information presented to the trial court in the pretrial hearing on
whether Perry would be allowed to cross-examine White on his history of hallucinations. Also, the
State presented a report generated by psychologist Bryan Smith, who evaluated White for
competency May 6, 2006. According to this document, White had been treated in mental health
facilities as a juvenile. As a child, he had a history of attention deficit hyperactivity disorder,
depression, sleep terror, sleep walking, and enuresis. There are references to his intelligence being
rated in the range of mental retardation. Corroborating White's own testimony, he had a history of
seeing a "monster with devil horns" and a "frog man." The report states it is "not clear whether these
were actual hallucinations." In the period of December 1998 to April 2000, White was diagnosed
with paranoid schizophrenia and psychotic disorder; he reported "unspecified" auditory
hallucinations. 

 Regarding Smith's contemporaneous observations of White, Smith noted that White appeared
"somewhat anxious and bland but not clearly depressive." He denied depression or suicidal ideation;
in general, Dr. Smith stated that his analysis was inconclusive because White declined to return for
a second day of evaluation. However, Smith did write that White "did report that he will see a 'green
man with horns on his head' who will tell him to 'do things.' [White] said that this green man would
tell him to watch who he is around because they might try to 'do something' to him and that this man
also  will  curse  and  tell  him  to  slap  somebody  but  he  indicated  that  he  tries  to  ignore  this
voice . . . ."

 We find Perry's situation with witness White to be analogous to Virts. The most telling
similarity is that the witnesses sought to be cross-examined in both cases were codefendants, whose
testimony is suspect. See generally Blake v. State, 971 S.W.2d 451, 453-54 (Tex. Crim. App. 1998). 
Available, relevant adverse evidence that might affect such a witness' credibility should be admitted
so that the jury might use it in making the determination of how much weight it should give the
witness' testimony. Virts, 739 S.W.2d at 27. White's status as a codefendant, combined with his
ongoing experiences of hallucinations or visions, takes this case into the realm of conduct
contemplated by Virts: 

 [Where] the witness is shown to have been suffering from a recent mental illness,
prior to the occurrence of the event in question, and such might be considered a
"persistent disabling disturbance of his mental and/or emotional equilibrium,
manifested through persistent maladjustment and more or less irrational, even bizarre
behavior and speech,". . . then, of course, the trial judge should permit the jury to
hear this kind of evidence. 


Id. at 30. As in Virts, we hold that Perry should have been able to cross-examine White regarding
White's history of visions and hallucinations.

 Finally, the State argues that, even if the testimony challenging the credibility of White was
relevant, it was proper to exclude it because its probative value was substantially outweighed by its
unfair prejudice. See Tex. R. Evid. 403. "Unfair prejudice" refers to a tendency to suggest a
decision on an improper basis, commonly, though not necessarily, an emotional one. Evidence
might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side
without regard to the logical probative force of the evidence. Casey v. State, 215 S.W.3d 870,
879-80 (Tex. Crim. App. 2007). A trial court, when undertaking a Rule 403 analysis, must balance
(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need
for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis,
(4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any
tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate
the probative force of the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already admitted. Gigliobianco
v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

 Here, the probative value of testing the credibility of an eyewitness to the murder scene
concerning recent mental illness manifested through bizarre behavior and speech has been explained
by the Texas Court of Criminal Appeals in Virts. Without this avenue of cross-examination, Perry
had no means of presenting White's hallucinations to the jury. It was not a distraction, but was
focused on the ability of the witness to relate events he had observed. It was unlikely to unduly
prolong the trial. The jury could have considered on a rational basis whether such testimony
diminished White's credibility. However, the jury had other evidence which corroborated White's
testimony. We do not find that the evidence is unfairly prejudicial, and certainly not to the extent
that it substantially outweighs the probative force of testing White's credibility on matters that might
affect an interference, due to mental infirmities, in his ability to perceive events accurately or relate
them. 

 Although the Virts court did not conduct a harm analysis, the Texas Court of Criminal
Appeals has evaluated similar situations where a defendant was denied the right to cross-examination. Such error is subject to a harmless error analysis: 

 In performing a harmless error analysis, the reviewing court must review the entire
record and apply a three-prong test. . . . Under the first prong, the reviewing court
must "assume that the damaging potential of the cross-examination [was] fully
realized." . . . The court must review the error in consideration of the following five
factors: (1) the importance of the witness's testimony; (2) whether the testimony was
cumulative; (3) the presence or absence of evidence corroborating or contradicting
the testimony of the witness on material points; (4) the extent of cross-examination
otherwise permitted; and (5) the overall strength of the prosecution's case.


Saglimbeni, 100 S.W.3d at 435-36 (citations omitted).

 After "assum[ing] that the damaging potential of the cross-examination [was] fully realized,"
we will examine the relevant factors. 

 (1) Importance of White's testimony

 (2) Cumulative testimony 

 White's testimony was very important to the State's case: he put Perry in the victim's home,
in the kitchen where the body was found, with a pistol. White heard a shot from the room where
Perry had taken Moore; White then saw Moore's body on the floor. While White's testimony was
not cumulative, there was other evidence of Perry's guilt. 

 (3) Evidence to corroborate or contradict White's testimony

 White's testimony is corroborated on some material points by other evidence: 

 Officer Matthew Smith testified that, on the day of Moore's death, he was patrolling in the
area near the scene of the crime. According to Smith's report, at approximately 3:30 a.m., he
encountered three black males jogging in the area. Due to the time of day and the location--a known
narcotics and prostitution area--he stopped two of them (Perry and Paxton), while another ran away. 
This testimony corroborates White's statements that he, Perry, and Paxton ran away from Moore's
house after the murder and that, when the police "pulled up," White continued to run, and Perry and
Paxton stopped.

 White testified that he dropped a pair of jeans near the fence in the back of Moore's residence
and that he took a "spinner" hubcap from Moore's home and threw it down as he was running away. 
This testimony is corroborated by evidence that police found a pair of jeans near the fence in the
back of Moore's residence and by evidence that police found a "spinner" hubcap in a vacant field
somewhere directly behind Moore's residence. 

 In addition, White's testimony is also firmly corroborated by the testimony of Perry's
girlfriend, Forbes, that Perry admitted to her that he killed "Tick."

 Further, there was no evidence contradicting White's version of the events.

 (4) The extent of cross-examination otherwise permitted

 Other than this limitation, White was fully cross-examined. 

 (5) The overall strength of the State's case

 Forbes' testimony that Perry admitted to her that he shot and killed Moore is very significant. 
An admission of guilt alone is sufficient to convict so long as the admission is corroborated as to the
corpus delicti of the crime. Farris v. State, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990), overruled
on other grounds by Riley v. State, 889 S.W.2d 290, 301 (Tex. Crim. App. 1994). The two elements
of proof necessary to prove the corpus delicti in a murder case are: (1) that the body or remains of
the deceased is found and (2) that the death of the deceased was caused by a criminal act of another. 
Self v. State, 513 S.W.2d 832, 833 (Tex. Crim. App. 1974). The circumstances of this case leave
virtually no doubt that Moore was killed by a criminal act. He was found lying on his kitchen floor
with a fatal gunshot in his torso entering from his back. Further, the fact that many of the details of
White's testimony were corroborated by the physical findings strengthens the State's case. As we have determined that Perry failed to preserve his constitutional right of confrontation,
the test in determining if the error is reversible is that found in Tex. R. App. P. 44.2(b) ("[a]ny other
error . . . that does not affect substantial rights must be disregarded"), rather than the test employed
for a constitutional violation (must reverse unless we determine beyond a reasonable doubt that the
error did not contribute to the conviction or punishment). An error affects a defendant's substantial
rights for Rule 44.2(b) purposes when the error has "a substantial and injurious effect or influence
in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 
Conversely, an error does not affect substantial rights if the appellate court "has fair assurance that
the error did not influence the jury, or had but a slight effect." Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998). 

 In determining if the error had a substantial and injurious effect in determining the jury's
verdict, we must consider all of the evidence presented. As discussed, much of White's testimony
surrounding the events of that night were corroborated by police investigation. The fact that a
policeman came upon these three individuals near the scene of the crime running away as White
described, at 3:30 a.m., is significant. While White's credibility could have been challenged by
reference to his mental problems, much of his testimony was corroborated. His testimony about the
events of that evening were straightforward and displayed no signs of an inability to relate the events
he had observed. Finally, the testimony of Forbes concerning Perry's admission of guilt weighs
heavily in this determination. Based on all of the evidence, we cannot say that the inability to
challenge White's credibility due to mental problems had a substantial and injurious effect on the
jury's determination of guilt. We find that the effect would, at most, be slight. Therefore, while we
find error in failing to allow the cross-examination requested, we do not believe, under the facts of
this case, that the error substantially affected the jury's determination and, therefore, the error must
be disregarded. See Tex. R. App. P. 44.2(b). 


Was It Error To Keep Perry from Cross-Examining Forbes About Her Arrest for Checks?


 Perry's second point of error complains the trial court erred and denied Perry his right to
confront and impeach the credibility of Shacretia Forbes. As we have previously discussed, no
mention of the constitutional right of confrontation was presented at the trial court level and,
therefore, it is not preserved for appeal. 

 Perry attempted to impeach Forbes' credibility by inquiring if she signed certain checks drawn
on his checking account. At trial, Perry asserted that this evidence was admissible to show Forbes'
bias. Outside the jury's presence, Forbes testified she had signed several checks on Perry's account
with his permission. Perry argues that, since Perry was arrested for a hot check violation, he should
be allowed to show that Forbes wrote certain checks on Perry's account. Perry asserts that this
information was relevant to show that Forbes was biased against Perry, or had a motive to keep him
incarcerated. However, no connection was shown between the checks that Forbes wrote on Perry's
account and the checks for which Perry was arrested. Further, there was no contradiction to Forbes'
testimony that all checks she wrote were with Perry's express permission. 

 As we have previously discussed, the trial court has discretion in the admission or exclusion
of evidence. See Green, 934 S.W.2d at 101-02; Montgomery, 810 S.W.2d at 379-80. We will not
reverse a trial court whose ruling was within the "zone of reasonable disagreement." Green, 934
S.W.2d at 102; Montgomery, 810 S.W.2d at 391. The trial court found no relevancy in Perry's
proffer, and further found that the testimony was not proper impeachment evidence. The trial court
pointed out that Forbes had not been arrested on these allegedly hot checks and that Forbes was not
subject to impeachment based on Rule 609. See Tex. R. Evid. 609. We find no error. Perry has not
shown at the trial court level or on appeal how this testimony would demonstrate Forbes' bias. 
Otherwise, this evidence is not admissible as impeachment for a crime as there was no evidence
Forbes had ever been convicted or even arrested for an offense involving the checks. See Tex. R.
Evid. 608, 609. No abuse of discretion has been shown. We overrule this point of error. 

 We affirm the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: June 6, 2007

Date Decided: October 5, 2007


Publish
1. "Specific Instances of Conduct. Specific instances of the conduct of a witness, for the
purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided
in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic
evidence." Tex. R. Evid. 608(b)
.