

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00118-CR

_____

TIMOTHY HEATH LESTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 23967

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Timothy Heath Lester was convicted of four counts of sexual assault of a child, habitual offender, and received enhanced punishment sentences of ninety-nine years' imprisonment for each count. Lester appeals his convictions on the sole ground that the trial court erred by excluding evidence of his victim's "mental health issues." We find no abuse of discretion in the trial court's exclusion of the evidence, overrule Lester's sole point of error, and affirm the trial court's judgment.

## I.      Standard of Review

A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion if the decision to exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's decision on the exclusion of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379.

## II.      Admissibility of "Victim's Mental Health Issues"

2

On appeal, Lester argues that the trial court erred in excluding the mother's testimony because he was "entitled to impeach a witness with evidence that might go to any impairment or disability affecting the witness's credibility." Before evidence is admissible, it must be relevant as defined by Rule 401 of the Texas Rules of Evidence. TEX. R. EVID. 401, 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

"The law is well settled that the credibility of the witness, and the weight to be given his or her testimony, is a matter for the jury to decide." *Perry v. State*, 236 S.W.3d 859, 865 (Tex. App.—Texarkana 2007, no pet.). "[T]he jury is entitled to hear evidence as to the mental status of the witness and the extent of his or her mental impairment." *Id.* (citing *Saucier v. State*, 235 S.W.2d 903, 915–16 (1950) (op. on reh'g)); *Bouldin v. State*, 222 S.W. 555, 557 (1920).

Thus, cross-examination of a testifying "witness to show that the witness has suffered a recent mental illness or disturbance is proper, provided that such mental illness or disturbance is such that it might tend to reflect upon the witness's credibility." *Virts v. State*, 739 S.W.2d 25, 30 (Tex. Crim. App. 1987). However, "the mere fact that the State's testifying witness has in the recent past suffered or received treatment for a mental illness or disturbance does not, for this reason alone, cause this kind of evidence to become admissible impeachment evidence." *Id.* In determining whether evidence is relevant, courts look to the purpose for offering the evidence and

whether there is a direct or logical connection between the offered evidence and the proposition sought to be proved. *Goodwin v. State*, 91 S.W.3d 912, 917 (Tex. App.—Fort Worth, no pet.) (citing *Reed v. State*, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd)).

### III. The Excluded Evidence

Lester's counsel was cross-examining the victim's mother when he asked, "Now, your child had a lot of emotional problems, has she not?" The victim's mother answered, "Due to this, yes."[1] The State objected, and the trial court held a hearing outside the jury's presence in which Lester's counsel argued,

> Your Honor, if the child -- extraneous bad acts or conduct of the child is not about her emotional stability. That's not a bad act or that's not extraneous conduct, that's -- we're talking about her emotional stability. . . .
>    The whole thing about this case is this child's credibility. The fact that she has had emotional difficulties; that's [sic] she has been hospitalized in a mental institution -- . . . on three different occasions is not a bad act.

The State argued, "The fact that she might've had emotional problems as a result of whatever it may be, shouldn't come in whether this man committed this crime or not." The court sustained the State's objection.

Lester's counsel asked the court to "make a Bill," and was allowed to question the mother outside the jury's presence. The testimony during the offer of proof established that the child was twice hospitalized for emotional difficulties, attempted to harm herself, threatened to kill herself, "self-mutilat[ed] herself" to "deal with the situation" when the mother "put her under house

---

[1]This response was never struck from the record, and the jury was not asked to disregard the response.

arrest," and that the last instance of self-mutilation occurred in March 2011. Throughout the trial, the child victim expressed her love for Lester, and the emotional difficulties she experienced appeared to stem from her forced isolation from him.

## IV.     Analysis

The record in this case demonstrated that the child's emotional issues manifested after her involvement with Lester was discovered. During direct examination, the victim's mother testified Lester was spending time with her daughter during the summer and had purchased a cell phone for her daughter.[2] The mother testified she allowed the two to spend time with each other "until it got to a point that me and her daddy thought something was going on . . . . When we tried to intercept, she got aggressive and started, you know, retaliating, wanting to kill herself, stuff like that. That's when we knew something was wrong." The mother also added that her daughter "was self-mutilating herself to deal with" the "house arrest" she was placed on by her parents, and that the daughter had emotional problems "[d]ue to this."

We are unable to pinpoint an argument as to how the evidence of this child's emotional disturbance occurring after the alleged acts could be used to impeach her credibility.[3] There was

---

[2]The mother could not remember what date the cell phone had been purchased.

[3]The State alleged that Lester had committed sexual assault of a child in August and September 2010. Lester's brief states that the victim's mother testified the child "had been admitted to two different mental institutions, had attempted on more than one occasion to harm herself, . . . and that this had continued from at least the Summer of 2010 until March, 2011." The brief specifically argues "these mental problems had existed either prior to or contemporaneously with the alleged crime." We do not believe that the record establishes Lester's proposition. The support for Lester's assertions in the brief cites to the following portion of the offer of proof: "Q. I believe you testified earlier that sometime in the summer -- and pardon me, I don't have the date -- sometime in the summer of 2010, she made a threat

no suggestion that these emotional problems could impair her ability to recall events, would contribute to a motive to fabricate the allegations, or would otherwise compromise the victim's credibility. Thus, the trial court was within its discretion to determine there was no logical nexus connecting the victim's emotional problems with her credibility. We overrule Lester's sole point of error.[4]

## V.    Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:        December 12, 2011
Date Decided:          December 14, 2011

Do Not Publish

---

to you, or expressed that she was going to kill herself or harm herself . . . ?   A.   Yes.   But can I explain why?"   The mother did not give a time frame for the emotional disturbances during her direct examination other than stating they began after the child's parents began to suspect the nature of the improper relationship.   She further clarified during the offer of proof that her daughter was "hurting herself to deal with the situation" after placement on "house arrest."

[4]Moreover, Lester is unable to demonstrate harm.   Substantial rights are not affected by the erroneous admission or exclusion of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."   *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (footnotes omitted).   If the evidence is generally cumulative of other evidence introduced in the case, no harm attaches.   *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (holding that to show harm, the excluded evidence must be controlling on a material issue and not cumulative of other evidence).   The offer of proof was generally cumulative to the mother's testimony during direct examination.